E-Filed 3/2/16

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATHALIE THUY VAN,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>LANGUAGE LINE SERVICES, INC., et al.,<br><br>　　　　Defendants. | Case No.  14-cv-03791-LHK   (HRL)<br><br>**ORDER ON DISCOVERY DISPUTE JOINT REPORT 1**<br><br>Re: Dkt. Nos. 195, 196 |

Plaintiff Nathalie Thuy Van ("Van") sues Language Line Services, Inc. and Language Line LLC ("Defendants") for alleged violations of state and federal labor laws. The parties met in early December of 2015 in order to discuss their outstanding discovery disputes; they were not able to resolve each dispute. The parties therefore filed Discovery Dispute Joint Report ("DDJR") 1. Dkt. No. 196 at 1-2.

The parties disagree, in general, on whether Defendants have produced all of the discoverable materials responsive to Van's interrogatories and requests for production. This dispute includes several subsidiary issues: (1) whether Defendants have adequately investigated and disclosed which employees "approved the preparation" of Van's earning statements and which employees have knowledge about the facts underlying this case, Dkt. No. 196 at 5; (2) whether Defendants may withhold information—documents and interrogatory answers—about why Gwyndolyn Allison ("Allison"), Van's former manager, left her job, Dkt. No. 196 at 3; (3) whether Defendants have improperly withheld any documents that might show why certain payroll records differ from the records Van had already received in the course of her employment, Dkt. No. 196 at 3-4; and (4) whether interrogatories and requests for production served on November 9, 2015 are unenforceable for irrelevance, for seeking information that is beyond the scope of discovery, or for untimeliness, Dkt. No. 196 at 8-9.

1  Defendants, in their portion of DDJR 1, rely substantially on privilege claims but fail to
2  assert any particular privilege. Defendants also notified the court of their intent to serve Van with
3  a partial and untimely privilege log. The court therefore issued an interim order that required
4  Defendants: (1) to lodge for in camera review any documents at issue in DDJR 1 for which
5  Defendants claim any privilege; (2) to submit a privilege log for those documents; and (3) to
6  explain why Defendants did not provide a timely privilege log to Van. Defendants lodged
7  documents with the court, submitted a privilege log for those documents, and asserted that they
8  had not provided a timely privilege log because Van never requested a privilege log until "45
9  minutes" before the parties intended to submit DDJR 1. Dkt. No. 204 at 2. Van responded that
10 she first requested a privilege log on October 19, 2015, nearly two months before the parties filed
11 DDJR 1. Dkt. No. 205 at 2. Defendants, in reply, conceded that Van had first "raised the issue of
12 a privilege log" in October and had also raised the issue again several days prior to the filing of
13 DDJR 1. Dkt. No. 207 at 2-3. Defendants also assert they provided Van with a privilege log for
14 this case on December 23, 2015. Dkt. No. 207 at 4.

## Discussion

16 The federal common law governs Defendants' privilege claims because the discovery
17 materials at issue relate to claims and defenses for which state law does not supply the rules of
18 decision. Fed. R. Evid. 501. A party that claims a federal privilege bears the burden to show that
19 the claimed privilege applies to the discovery materials at issue. *E.g.*, *Hernandez v. Tanninen*, 604
20 F.3d 1095, 1102 (9th Cir. 2010). Privilege claims "obstruct the search for truth," *U.S. v.
21 Roberson*, 859 F.2d 1376, 1378 (9th Cir. 1988), and therefore federal courts narrowly construe
22 privilege claims to serve the purposes underlying those privileges, *In re Pacific Pictures Corp.*,
23 679 F.3d 1121, 1126-27 (9th Cir. 2012).

24 The court addresses a threshold issue: whether Defendants have waived their privilege
25 claims by providing an untimely privilege log. A party may waive boilerplate privilege claims in
26 discovery responses if the party fails to timely support those boilerplate claims with a privilege
27 log. *Burlington Northern & Santa Fe Ry. Co. v. U.S. Dist. Court for Dist. of Mont.*, 408 F.3d
28 1142, 1149 (9th Cir. 2005). The court should analyze the "holistic reasonableness" of the

United States District Court
Northern District of California

claimant's actions in light of three factors: (1) the degree to which the privilege claims and related discovery responses contained enough information to permit a review of whether the claims are valid; (2) the timeliness with which the privilege claimant served the privilege claims and related discovery responses on the party seeking discovery; and (3) whether a high volume of document production or other factors have made document production unusually easy or difficult in the case. *Id.* These factors do not "mechanistic[ally]" require one outcome or another; rather, the court's "holistic" analysis may include any other "mitigating circumstances" that weigh against finding waiver. *See id.*; *see also Khasin v. The Hershey Company*, 12-cv-1862-EJD-PSG, 2014 WL 690278 at 6 (N.D. Cal. Feb. 21, 2014) (considering "the totality of the circumstances" while applying *Burlington*'s factors). The "holistic reasonableness" standard should be applied in a manner that discourages unreasonable "tactical manipulation" committed by privilege claimants. *Id.*

   The court finds waiver inappropriate under the circumstances of this case. The privilege log Defendants eventually provided Van was untimely and the information previously given to Van did not contain detailed assertions of privilege, but that information was nevertheless sufficiently detailed for Van to understand that Defendants were asserting "attorney-client privilege[]" as to most of the withheld documents. Dkt. No. 196 at 4. The court therefore finds that the degree-of-detail factor weighs only slightly in favor of waiver. Likewise, Defendants' untimeliness here—they produced a detailed privilege log approximately two months after Van requested it—also does not weigh heavily against Defendants. *Accord Khasin*, 2014 WL 690278 (concluding a delay of seven months did not weigh heavily in favor of finding waiver when the privilege claimant produced the log less than two months after the opposing party requested it). As to the third factor, the court notes discovery has been much more contentious and difficult in this case than in the average case, *e.g.*, Dkt. No. 70 (Van moving to sanction Defendants for abusing the discovery process), Dkt. No. 150 at 3 (Defendants accusing Van of abusing the discovery process), which weighs against a finding of waiver. The court has also conducted in-camera review of the documents withheld by Defendants under attorney-client privilege claims and, indeed, those documents clearly qualify as privileged attorney-client communications. The

1    court is persuaded that Defendants have not engaged in "tactical" gamesmanship and that
2    Defendants' conduct has not been unreasonable enough, under the totality of the circumstances, to
3    justify the waiver of privilege claims.

4        The court turns to the first substantive dispute presented in DDJR 1: whether Defendants
5    have adequately disclosed which employees "approved the preparation" of Van's earning
6    statements and which employees have knowledge about the facts underlying this case. Defendants
7    informed Van that at least two specific employees "approved the preparation" of her earning
8    statements. Defendants also provided a list of several specific employees who had knowledge of
9    the case. Dkt. No. 196-2 at 4, 7. Van argues that additional responsive information must exist
10   because Defendants stated in their disclosures that "investigation and discovery are continuing."
11   Dkt. No. 196-2 at 6, 23. The language Van focuses on does not tend to show Defendants have
12   failed to comply with their discovery obligations. Rather, as Defendants argue, Van misinterprets
13   language that innocuously reserves the right to supplement discovery responses if Defendants
14   discover additional responsive information. Dkt. No. 196 at 6-7. The court shall not, on the basis
15   of Van's speculative concerns, order further investigation or production with respect to this
16   discovery issue.

17       The court next addresses Van's request for information that explains why Allison stopped
18   working for Defendants. Defendants argue they do not need to provide any such information
19   because it is "irrelevant, [the request is] overbroad, and [production would] invade[] . . . Allison's
20   privacy rights." Dkt. No. 196 at 7. Defendants, pursuant to the court's interim order on this
21   DDJR, lodged personnel files related to Allison and submitted a privilege log. As to Allison's
22   personnel files, Defendants claim privileges for "3rd party privacy[,] . . . confidentiality[, and]
23   confidential and proprietary business information[.]" Van responds that the requested materials
24   are relevant and that the court has already issued a protective order that adequately addresses
25   Defendants' concerns. *See* Dkt. No. 196 at 3.

26       The court agrees with Van. Defendants dispute neither that Van reported Allison's alleged
27   labor-law violations to Defendants nor that Allison stopped working for Defendants a few days
28   later. Van's undisputed assertions raise the inference that Defendants fired Allison, or perhaps

4

forced her to resign, in order to distance themselves from labor-law violations Allison had committed as their corporate agent. Information about why Allison left her job is therefore relevant to Van's claims in this case. Defendants' vague invocations of privacy and confidentiality do not constitute any colorable privilege claim under the federal common law. The court also notes that it was Defendants who moved the court to issue a protective order precisely so Defendants could begin to produce responsive "confidential commercial and trade secret information" and "sensitive" personal information. Dkt. No. 114 at 2. Defendants now disingenuously argue that the confidentiality safeguards they requested are inadequate. The court is far from persuaded.

The court notes on the basis of its in-camera review, however, that several sensitive documents in Allison's personnel file do not contain any information about why Allison left her job. Defendants shall produce the documents that contain information about why Allison left her job—the documents marked by Defendants with "PRIV" numbers 000001-000003 and 000007-000009. Defendants need not produce the other documents in Allison's personnel file.

Defendants argue they have not wrongfully withheld any documents related to "the incident, the [allegedly] forged schedules, and the [allegedly] forged paystubs" because "unprivileged responsive documents have never existed." Dkt. No. 196 at 8. Van responds that Defendants' use of the word "unprivileged" shows that responsive documents exist but have been withheld under inadequately proven privilege claims. Nevertheless, as discussed, the court's in-camera review has shown that Defendants' attorney-client privilege claims are justified with respect to the documents at issue in this DDJR and Defendants have not waived those privilege claims. The court therefore shall not require Defendants to produce any privileged emails responsive to Van's request.

Finally, Defendants argue that interrogatories and requests for production served on November 9, 2015 are unenforceable for irrelevance, for seeking information that is generally beyond the scope of discovery, and for untimeliness. Dkt. No. 196 at 8-9. Van seeks discovery materials that fall into one of three distinct categories: (1) materials related to the acquisition of AT&T Language Line Services by Language Line, LLC; (2) materials related to a class-action

1  settlement or to back pay issued at the behest of the Department of Labor; and (3) specific emails
2  that relate directly to Van's employment history. Dkt. No. 196-1 at 17-18, 47-48.

3        Defendants do not elaborate on their irrelevance argument and, upon review of the
4  interrogatories and requests for production at issue, the undersigned rejects it. Relevance is a very
5  low bar—"any tendency" to make a consequential fact more or less likely. Fed. R. Evid. 401.
6  Defendants made the acquisition of AT&T Language Line Services a relevant issue in this case:
7  defense counsel argued to the undersigned during a motion hearing that the circumstances of that
8  acquisition will show Van's original employment contract has been superseded and therefore
9  claims based on the terms of her original contract are invalid. *See* Dkt. No. 159 at 2. Documents
10 that tend to establish whether that acquisition changed the terms of Van's employment therefore
11 have relevance. Similarly, Van argues she opted out of a class action settlement in order to bring
12 her own claims in this case, and discovery materials that tend to establish or refute that argument
13 also have relevance to Van's claims.

14       Defendants likewise do not elaborate on why any particular interrogatory or request might
15 be beyond the permissible scope of discovery. Nevertheless, the undersigned substantially agrees
16 with Defendants' conclusion. Each interrogatory served on November 9, 2015 seeks information
17 that is not discoverable because the production of that information would not be proportional to
18 the needs of this case. Dkt. No. 196-1 at 47-48. The requested information—how many class
19 members received compensation, how much compensation did they each receive, how many
20 workers received back pay as part of an agreement with the Department of Labor—has very little
21 probative value in this case. The court therefore finds that it would not be proportional to the
22 needs of this case if Defendants were required to answer those interrogatories. Fed. R. Civ. P.
23 26(b)(1). Likewise, it would not be proportional to the needs of this case if Defendants responded
24 to requests for production 20, 21 and 22, which seek precisely the same low-probative-value
25 information as the concurrently served interrogatories.

26       The other requests for production served on November 9, however, seek discoverable
27 documents. Request for production 18 seeks all documents "regarding the acquisition of AT&T
28 Language Line Services" and, as discussed, Defendants have put that information at issue by

arguing that a past acquisition altered the terms of Van's employment. Requests for production 19, 23, and 24 each seek a different specific email that relates to Van's own employment history, and those emails are likely to have some probative value with respect to Van's claims. The court is persuaded that the virtually non-existent burden of producing three specific emails is proportional to the evidentiary needs of this wage-and-hour case. Fed. R. Civ. P. 26(b)(1).

The court notes, however, that request for production 18 broadly requests all documents "regarding" the acquisition rather than the subset of documents that tend to prove or disprove the defense raised by Defendants. The court narrows the scope of request for production 18; Defendants, in response to that request, need produce only documents that tend to show whether the AT&T Language Line Services acquisition altered the terms of Van's employment contract.

The court rejects Defendants' timeliness argument. Even if Van served her interrogatories a few business-days too late, Dkt. No. 196 at 8-9, Defendants make no argument that they have been prejudiced. Rather, Defendants rest on the technical argument that they need not produce responsive documents unless and until the court finds good cause for them to do so. Dkt. No. 196 at 64. In light of Van's pro se status, the small degree of Van's untimeliness, and the lack of prejudice to Defendants, the court finds good cause to order the production of the documents responsive to requests for production 18, 19, 23, and 24.

**Conclusion**

Defendants assert no colorable privilege against Van's requests for relevant information about why Allison left her job; Defendants shall therefore answer the interrogatory that asks why Allison left her job and shall produce the documents marked with "PRIV" numbers 000001-000003 and 000007-000009. Requests for production 18, 19, 23, and 24 request probative documents; the production of documents responsive to those requests would be proportional to the needs of this case and the court finds good cause to order the production of any such documents. The court, however, narrows request for production 18—Defendants need only respond by producing documents that tend to show whether the acquisition of AT&T Language Line Services altered the terms of Van's employment. The court denies Van's other requests to compel production because those requests depend on speculation, or seek discovery that is not

proportional to the needs of this case, or seek privileged attorney-client communications. Defendants shall complete the production required by this order no later than March 11, 2016.

**IT IS SO ORDERED.**

Dated: 3/2/16

_____
HOWARD R. LLOYD
United States Magistrate Judge

8