1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| NATHALIE THUY VAN,<br><br>                 Plaintiff,<br><br>          v.<br><br>LANGUAGE LINE SERVICES, INC. and<br>LANGUAGE LINE LLC<br><br>                 Defendants. | Case No. 14-CV-03791-LHK<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 211, 218 |

Plaintiff Nathalie Thuy Van ("Plaintiff") and Defendants Language Line Services, Inc. and Language Line LLC (collectively, "Defendants") cross move for summary judgment.  ECF Nos. 211 ("Pl. MSJ"); 218 ("Defs. MSJ").  Having considered the submissions of the parties, the relevant law, and the record in this case, the Court hereby GRANTS in part and DENIES in part Plaintiff's motion for summary judgment, and GRANTS Defendants' motion for partial summary judgment.

I.      **BACKGROUND**

   A.  **Plaintiff's Employment with Defendants**

       In 1997, Plaintiff began regular, part-time employment as an over-the-phone Vietnamese

1

Case No. 14-CV-03791-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

1    interpreter with AT&T Language Line Services ("AT&T Language Line").  ECF No. 212, Decl.

2    of Nathalie Thuy Van ("Van Decl."), Ex. 2.  According to the terms of Plaintiff's offer letter,

3    Plaintiff would work 39 hours per week at $11.06 per hour, with a 10% night differential and

4    increased pay for working overtime.  *Id.*  The offer letter also indicated that Plaintiff would be

5    eligible for annual raises and would receive seven "floating holidays" per year, holiday pay for

6    working on Thanksgiving, Christmas, and New Year's Day, and fifteen days of vacation and four

7    excused days after a certain length of employment.  *Id.*  For purposes of the instant motions,

8    Defendants do not dispute that the 1997 offer letter governed Plaintiff's employment with AT&T

9    Language Line.  Defs. MSJ at 17 n.8.

10       On March 22, 1999, Defendant Language Line, LLC purchased the assets of AT&T

11   Language Line.  ECF No. 218-22, Decl. of Joel P. Kelly ("Kelly Decl."), Ex. BB.  The purchase

12   agreement provided that Language Line, LLC "shall make written offers of employment to all

13   Business Employees for positions which are comparable to the positions such Business Employees

14   hold as of the date of such offer."  *Id.* § 7.8(a)(3).  The purchase agreement also provided that, for

15   nine months after the closing date, AT&T Language Line employees who transitioned to

16   Language Line, LLC "shall be entitled to at least the same annual rate of cash compensation" and

17   comparable benefits to what the employees were receiving prior to the purchase.  *Id.* § 7.8(a)(4),

18   (b)(2).  Plaintiff transitioned to Language Line, LLC after the purchase and asserts that "[o]ther

19   than a change in the name on [Plaintiff's] paycheck, the transition . . . was not evident from

20   [Plaintiff's] perspective."  ECF No. 221 ("Pl. Opp."), at 15.  For purposes of the instant motions,

21   Defendants do not contest that Plaintiff was and still is employed by Defendants Language Line,

22   LLC and Language Line Services, Inc.  Defs. MSJ at 5 n.1.

23       Since 2010, Plaintiff usually has worked eight hours per day, Monday through Friday, with

24   two fifteen-minute breaks and one thirty-minute lunch period per day.  *See* Kelly Decl. Ex. V and

25   ECF No. 220 ("Kelly Opp. Decl.") Ex. 6, Deposition of Nathalie Thuy Van ("Van Depo."), at 29–

26   30, 32, 38.  Plaintiff's schedule is managed through a program called "Impact 360."  ECF No.

27

28
2

United States District Court
Northern District of California

1  220-15, Decl. of Barbara Sadler ("Sadler Decl."), ¶ 3.  For each day, Impact 360 shows Plaintiff

2  when breaks, lunch, and work are scheduled.  Van Depo. at 30–31.  During a scheduled break, the

3  system blocks incoming calls so that Plaintiff does not receive calls to interpret.  *Id.* at 34–35.  If a

4  call to interpret runs into a scheduled break, the system automatically moves the break to the end

5  of the call so that Plaintiff receives the full break time.  *Id.* at 46–47.  If for some reason a break is

6  not scheduled in Impact 360, Plaintiff must request a break from Plaintiff's supervisor.  *Id.* at 47.

7  Since 2002, Plaintiff has been paid $16.05 per hour.  Van Depo. at 107, 147–48.

8  Plaintiff claims that, throughout Plaintiff's employment, Defendants frequently failed to

9  pay Plaintiff overtime and provide breaks and meal periods.  For example, on June 2, 2011,

10  Plaintiff emailed an employee of Defendants and claimed that Plaintiff had not been paid for

11  overtime hours worked on seven days between March and May 2011 and that Plaintiff's schedule

12  "was not accurate on Impact 360."  Van Decl. Ex. 14.  On February 10, 2012, Plaintiff's

13  supervisor ignored Plaintiff's request for a break when a break was not scheduled in Impact 360.

14  Van Depo. at 47; Van Decl. Ex. 28 (email from Plaintiff to supervisor requesting a break).

15  Similarly, on May 26, 2012, Plaintiff emailed Georgette Bloomer ("Bloomer"), Plaintiff's

16  supervisor from 1998 to 2013, to report that Plaintiff was forced to skip one lunch and multiple

17  breaks in May 2012, partially due to scheduling for certain testing.  Van Decl. Ex. 16.  Plaintiff

18  stated that Defendants had "many times" failed to pay Plaintiff for overtime or missed breaks.

19  Van Decl. Ex. 16.  Plaintiff continued that Plaintiff would no longer administer testing, and to

20  "please let me know whether my employment status will change."  *Id.*  Bloomer responded,

21  "Please rest assured your decision to no longer be a part of the testing process will in no way

22  reflect on your standing with the Company."  *Id.*

23  In addition to forcing Plaintiff to work unpaid overtime and without breaks, Defendants

24  allegedly downgraded one of Plaintiff's performance reviews for no reason.  Van Decl. ¶ 39.

25  Specifically, on August 24, 2012, Plaintiff received a performance evaluation rating of "Exceeding

26  expectations" (or a numeric score of "4").  Van Decl. Ex. 42, Kelly Decl. Ex. X, and Kelly Opp.

27

28  Case No. 14-CV-03791-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

United States District Court
Northern District of California

Decl. Ex. 8, Deposition of Georgette Bloomer ("Bloomer Depo.") at 41, Ex. 58 thereto.  Then, on October 22, 2012, Plaintiff received a letter awarding Plaintiff a bonus that reported a lower rating of "meets expectations" (or a "3").  *Id.* at 41 (discussing performance rating system); Ex. 58 thereto (bonus letter).  Plaintiff emailed Bloomer questioning the discrepancy.  *Id.* Ex. 58 thereto. Bloomer responded that Plaintiff's October 22, 2012 bonus letter contained an inadvertent mistake: Plaintiff's bonus was correct, but Plaintiff's August 24, 2012 performance rating was listed erroneously and would be corrected.  *Id.*  On October 30, 2012, Plaintiff received an updated bonus letter awarding Plaintiff the same bonus and rating Plaintiff's performance as "Exceeds Most Expectations."  *Id.*  In her deposition, Bloomer testified that both "Exceeds most expectations" and "Exceeding expectations" receive a numeric score of "4," are the same, and qualify for the same bonus.  *Id.* at 43.

Plaintiff also claims that Defendants attempted to demote her although Plaintiff received good performance reviews.  On January 23, 2013 and February 14, 2013, Language Line Solutions emailed Plaintiff about a job offer for video interpreters in Monterey.  Van Decl. Ex. 32. On both occasions, Plaintiff declined the position.  *Id.* (Plaintiff's January 24, 2013 and February 15, 2013 emails declining to apply for position).  It appears that no further action was taken, and Plaintiff continues to work as an over-the-phone interpreter.

More recently, on June 12, 2014, Defendants changed Plaintiff's department code from "115" to "110."  Van Decl. Ex. 37.  Plaintiff states that she "was not told that her employment code was changed.  Plaintiff was never told why her employment code was changed or what the code means."  ECF No. 227 ("Pl. Reply"), at 6.  Plaintiff discovered the change in code on October 26, 2015, during discovery for the instant litigation.  Van Decl. ¶ 43.

Moreover, on April 21, 2015 Plaintiff signed the 2015 Code of Conduct stating "I acknowledge that my employment with the Company is at-will."  *Id.* Ex. 36.  Plaintiff claims that Defendants forced Plaintiff to sign the at will agreement.  *Id.* ¶¶ 41–42.

In response to Plaintiff's complaints about unpaid overtime and other wages, Defendants

United States District Court
Northern District of California

4

Case No. 14-CV-03791-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

1    "completed an audit of the alleged missing time" and "paid [Plaintiff] for the hours that were

2    missing."  Kelly Opp. Decl. Ex. 7, Deposition of Kimberly Schnader, at 52.  Although Defendants

3    do not state how much "missing time" was paid, Plaintiff offers evidence that on March 4, 2016,

4    Defendants paid Plaintiff for 13.75 overtime hours.  *See* Van Decl. Ex. 13 (seven checks from

5    Defendants to Plaintiff along with associated earnings records).

6    **B.  Santa Clara County Superior Court Proceedings**

7        The instant lawsuit follows protracted litigation in California state court arising out of

8    Plaintiff's employment with Defendants.  On April 8, 2013, Plaintiff filed suit in Santa Clara

9    County Superior Court against Defendant Language Line Services, Inc., a number of related

10   corporate entities, and individual defendants.  ECF No. 218-1, Defendants' Request for Judicial

11   Notice ("RJN"), Ex. A.  Plaintiff amended her complaint twice, and alleged 11 claims in the

12   Second Amended Complaint, including racial discrimination, retaliation, and harassment in

13   violation of California's Fair Housing and Employment Act; violations of the California Labor

14   Code; fraudulent misrepresentation; failure to prevent discrimination and harassment; negligence;

15   and intentional and negligent infliction of emotional distress.  RJN Ex. C.  When Defendants'

16   Vice President of Human Resources Frank Perry ("Perry") accepted service of the Second

17   Amended Complaint on June 26, 2013, Perry allegedly told the process server that Plaintiff "is a

18   cuckoo."  Van Decl. Ex. 34 (Decl. of Albert Nguyen-Phuoc).

19       On September 11, 2013, Santa Clara County Superior Court Judge Mark Pierce sustained

20   without leave to amend demurrers to Plaintiff's negligence, intentional infliction of emotional

21   distress, and negligent infliction of emotional distress claims, as well as individual defendants'

22   demurrers to Plaintiff's racial discrimination, retaliation and failure to prevent discrimination and

23   harassment claims.  RJN Ex. D.  On September 17, 2013, Plaintiff dismissed all defendants

24   without prejudice with the exception of defendant "Language Line Solutions[SM]," which had not

25   made an appearance in the case because it is a non-entity service mark.  Plaintiff sought and

26   acquired a default judgment as to Language Line Solutions.  *See id.* Ex. F (Ex. 3 thereto).

Case No. 14-CV-03791-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

United States District Court
Northern District of California

1        On October 31, 2013, Plaintiff filed a complaint against Judge Pierce.  *Id.* Ex. 8 thereto.

2    The action was reassigned to Santa Clara County Superior Court Judge Peter Kirwan, who set

3    aside the default against Language Line Solutions on November 26, 2013.  *Id.* Ex. 3 thereto.

4    Language Line Services, Inc. filed an answer to the Second Amended Complaint asserting that it

5    had been erroneously sued as Language Line Solutions.  *Id.* Ex. 4 thereto.

6        On December 2, 2013, Plaintiff filed a statement of disqualification against Judge Kirwan.

7    *Id.* Ex. 7 thereto.  On December 9, 2013, Plaintiff sent a complaint of judicial misconduct

8    regarding Judge Kirwan to the California Attorney General and Commission on Judicial

9    Performance.  *Id.* Ex. F.  The next day, Judge Kirwan filed a verified answer to Plaintiff's motion

10   for disqualification.  *Id.* Ex. H.  The Judicial Council assigned Santa Cruz County Superior Court

11   Judge Ariadne Symons to preside over Plaintiff's complaint, and Judge Symons concluded that

12   Plaintiff's complaint against Judge Kirwan was based on "nothing more than speculation and

13   conjecture," and denied Plaintiff's motion to disqualify Judge Kirwan.  *Id.* Ex. I.

14       As the case proceeded, Plaintiff refused to appear at three properly noticed depositions.

15   On August 21, 2014, Santa Clara County Superior Court Judge Patricia Lucas found that Plaintiff

16   repeatedly and knowingly failed to obey the court's order denying a stay of Plaintiff's deposition

17   and issued tentative rulings granting monetary sanctions against Plaintiff.  RJN Ex. J.

18       On August 21, 2014, the same day Judge Lucas issued her tentative rulings sanctioning

19   Plaintiff, Plaintiff filed her federal complaint and a "motion to transfer case from state court."

20   ECF Nos. 1, 4.  On August 26, 2014—three days prior to a scheduled hearing on terminating

21   sanctions—Plaintiff dismissed her state court action without prejudice.  RJN Ex. L.  On September

22   2, 2014, the order awarding monetary sanctions against Plaintiff was formally entered.  *Id.* Ex. J.

23   On September 23, 2014, Judge Lucas entered judgment in favor of Language Line Services, Inc.

24   and awarded costs of suit.  ECF No. 21-2 Ex. E.

25   **C.  The Instant Action**

26       As noted, Plaintiff filed the instant complaint pro se on August 21, 2014.  ECF No. 1.  On

27

28   Case No. 14-CV-03791-LHK
     ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY
     JUDGMENT AND GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

United States District Court
Northern District of California

January 16, 2015, the Court granted Defendants' motion for costs under Federal Rule of Civil Procedure 41(d), which permits a defendant to recover costs when "a plaintiff who previously dismissed an action in any court files an action based on or including the same claim against the same defendant." ECF No. 40 at 6 (quoting Fed. R. Civ. P. 41(d)). The Court first found that "[a] comparison of Plaintiff's state court complaint and federal [c]omplaint reveals that the two pleadings are functionally indistinguishable." *Id.* at 7. The Court then found that costs were warranted because "the circumstances of Plaintiff's 'transfer' of her state court action to federal court are indicative of the type of forum shopping that Rule 41(d) aims to prevent," and Plaintiff's "discovery abuse" and refusals to comply with an order of the Superior Court "are consistent with Defendants' argument that Plaintiff has engaged in vexatious litigation tactics." *Id.* at 9. The Court stayed the proceedings until Plaintiff paid the costs, which Plaintiff did on February 6, 2015. ECF No. 41. On reconsideration, the Court reduced the amount of costs awarded to Defendants and ordered Defendants to partially reimburse Plaintiff. ECF No. 194.

On March 13, 2015, Plaintiff filed a motion to sanction Defendants, ECF No. 44, which Plaintiff withdrew on April 10, 2015 after acquiring counsel, ECF No. 58. Accordingly, the Court denied Plaintiff's request for sanctions as moot on April 13, 2015. ECF No. 59.

On April 22, 2015, Plaintiff filed the First Amended Complaint ("FAC"). ECF No. 61. Plaintiff asserts eight causes of action: (1) unpaid overtime in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207(a)(1); (2) unpaid overtime in violation of California Labor Code §§ 510, 1194; (3) unpaid meal period wages in violation of California Labor Code §§ 218.5, 218.6, 226.7, 512; (4) failure to provide itemized wage statements in violation of California Labor Code § 226; (5) retaliation in violation of California Labor Code § 1102.5(b) and common law; (6) intentional infliction of emotional distress ("IIED"); (7) breach of contract; and (8) unlawful business practices in violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200. Defendants answered the FAC on May 11, 2015. ECF No. 66.

On July 24, 2015, Plaintiff substituted herself as counsel. ECF No. 69. Three days later,

1   Plaintiff renewed her motion for monetary sanctions against Defendants, ECF No. 70, which the

2   Court denied on August 27, 2015, ECF No. 106.

3       On March 24, 2016, the parties filed cross-motions for summary judgment.  ECF Nos. 211,

4   218.  Defendants also filed a request for judicial notice.  *See* RJN.  On April 7, 2016, the parties

5   filed opposition briefs.  ECF No. 220 ("Defs. Opp.");  Pl. Opp.  In addition to a brief, Defendants

6   separately filed thirty pages of objections to the evidence presented by Plaintiff, ECF No. 220-16,

7   and another request for judicial notice, ECF No. 220-1 Ex. A.  Plaintiff also filed a request for

8   judicial notice.  ECF No. 223.  On April 14, 2016, the parties filed replies.  ECF No. 225 ("Defs.

9   Reply");  Pl. Reply.  That same day, Plaintiff filed a response to Defendants' objections to the

10  evidence presented by Plaintiff.  ECF No. 228.  Also on April 14, 2016, Defendants filed thirty-

11  five pages of objections to the evidence offered by Plaintiff in connection with Plaintiff's

12  opposition brief.  ECF No. 225-5.

13      On April 15, 2016, the Court struck both sets of Defendants' objections to Plaintiff's

14  evidence because the objections were filed in violation of the Court's local rules.  ECF No. 226.

15  The Court noted that Defendants filed 65 pages of objections in addition to Defendants'

16  substantive briefs even though Civil Local Rule 7-3 provides that "[a]ny evidentiary and

17  procedural objections to the motion [or opposition] must be contained in the brief or

18  memorandum."  *Id.*  Additionally, the Court noted that Civil Local Rule 7-3 limits an opposition

19  brief to "25 pages of text" and a reply brief to "15 pages of text."  *Id.*  The Court thus struck

20  Defendants' objections.  Consequently, Plaintiff's response to Defendants' objections is moot.

21  *See* ECF No. 228.

22      Although briefing on the instant motions was closed, on April 19, 2016, Plaintiff filed two

23  supplemental declarations: one in support of Plaintiff's opposition brief, ECF No. 231, and one in

24  support of Plaintiff's reply brief, ECF No. 230.  As discussed in Section III.A below, Plaintiff's

25  supplemental declarations are untimely and are stricken.

26      On April 20, 2016, Plaintiff filed additional responses to Defendants' stricken objections to

27

28  Case No. 14-CV-03791-LHK
    ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY
    JUDGMENT AND GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

United States District Court
Northern District of California

Plaintiff's evidence.  ECF No. 232.  Because Defendants' objections were stricken on April 15, 2016, Plaintiff's additional responses are deemed moot.  On April 25, 2016, Plaintiff filed a response to Defendants' request for judicial notice.  ECF No. 238.[1]

## II.      LEGAL STANDARD

Summary judgment is appropriate if, viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmoving party, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  At the summary judgment stage, the Court "does not assess credibility or weigh the evidence, but simply determines whether there is a genuine factual issue for trial." *House v. Bell*, 547 U.S. 518, 559–60 (2006).  A fact is "material" if it "might affect the outcome of the suit under the governing law," and a dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable trier of fact to decide in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50 (citations omitted).

The moving party bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323.  Where the party opposing summary judgment will have the burden of proof at trial, the party moving for summary judgment need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325; *accord Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).  If the moving party meets its initial burden, the nonmoving party must set forth, by affidavit or as otherwise provided in Rule 56, "specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250.

---

[1] On April 26, 2016, Plaintiff filed what appears to be an identical document, also styled as Plaintiff's response to Defendants' request for judicial notice.  ECF No. 233.  Because this document is duplicative of Plaintiff's April 25, 2016 response, the Court does not separately consider the April 26, 2016 document.

United States District Court
Northern District of California

1    When, as here, the parties have filed cross-motions for summary judgment, the Court

2    "review[s] each motion for summary judgment separately, giving the nonmoving party for each

3    motion the benefit of all reasonable inferences."  *Ctr. for Bio-Ethical Reform, Inc. v. L.A. Cty.*

4    *Sheriff Dep't*, 533 F.3d 780, 786 (9th Cir. 2008).  In so doing, the Court "must consider each

5    party's evidence, regardless under which motion the evidence is offered."  *Las Vegas Sands, LLC*

6    *v. Nehme*, 632 F.3d 526, 532 (9th Cir. 2011).

## III.    EVIDENTIARY ISSUES AND JUDICIAL NOTICE

### A.  Plaintiffs' Supplemental Declarations

9    As noted, on April 19, 2016, Plaintiff filed two supplemental declarations: one in support

10   of Plaintiff's opposition brief and one in support of Plaintiff's reply brief.  ECF Nos. 230, 231.

11   However, the deadline for Plaintiff to file an opposition and any supporting documents was April

12   7, 2016.  ECF No. 218 (setting deadlines); *see also* Civ. L.R. 7-3(a) (noting an opposition may

13   include declarations and "must be filed and served not more than 14 days after the motion was

14   filed").  The deadline for Plaintiff to file a reply and any supporting documents was April 14,

15   2016.  ECF No. 211 (setting deadlines); *see also* Civ. L.R. 7-3(c) ("The reply to an opposition

16   must be filed and served not more than 7 days after the opposition was due.").  Plaintiff provides

17   no explanation as to why the April 19, 2016 supplemental declarations were filed in violation of

18   the local rules even though Plaintiff timely filed opposition and reply briefs along with supporting

19   evidence.  Because the supplemental declarations were filed after the close of briefing, Defendants

20   had no opportunity to respond to these supplemental declarations, and it would be prejudicial for

21   the Court to consider them.  Accordingly, the Court STRIKES Plaintiff's two April 19, 2016

22   supplemental declarations.  *See Elliot v. Spherion Pac. Work, LLC*, 368 F. App'x 761, 763 (9th

23   Cir. 2010) (affirming the district court's refusal to consider evidentiary objections submitted in

24   violation of the court's local rules).

### B.  Judicial Notice

26   The Court may take judicial notice of "a fact that is not subject to reasonable dispute"

27

28
Case No. 14-CV-03791-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

1    when the fact is either "generally known within the trial court's territorial jurisdiction" or "can be

2    accurately and readily determined from sources whose accuracy cannot reasonably be questioned."

3    Fed. R. Evid. 201(b).  Proper subjects of judicial notice include, for example, "court filings and

4    other matters of public record."  *Reyn's Pasta Bella, LLC v. Visa USA, Inc*., 442 F.3d 741, 746 n.6

5    (9th Cir. 2006).  The Court first examines Plaintiff's request for judicial notice then Defendants'

6    requests.

7         Plaintiff requests judicial notice of four documents: (1) an order issued in Plaintiff's Santa

8    Clara County Superior Court case; (2) a discovery order issued by Magistrate Judge Howard

9    Lloyd in the instant case; (3) Plaintiff's amended computation of damages; and (4) the declaration

10   of Albert Nguyen-Phuoc, a process server.  ECF No. 223.  The orders issued in Plaintiff's state

11   court case and the instant case are judicially noticeable, and the Court GRANTS Plaintiff's request

12   for judicial notice of these two documents.  *See Reyn's Pasta Bella, LLC*, 442 F.3d at 746 n.6

13   (holding that court documents are subject to judicial notice); *United States v. Author Servs., Inc.*,

14   804 F.2d 1520, 1523 (9th Cir. 1986) ("It is well established that a court may take judicial notice of

15   its own records."), *overruled on other grounds by United States v. Jose*, 131 F.3d 1325 (9th Cir.

16   1997) (en banc).  However, Plaintiff's computation of damages is a vigorously contested issue in

17   this case, *see* Defs. Opp. at 5–8, and the contents of Albert Nguyen-Phuoc's declaration are neither

18   "generally known within the trial court's territorial jurisdiction" nor "accurately and readily

19   determined from sources whose accuracy cannot reasonably be questioned," Fed. R. Evid. 201(b).

20   Accordingly, the Court DENIES Plaintiff's request as to Plaintiff's computation of damages and

21   Albert Nguyen-Phuoc's declaration.

22        Nonetheless, the Court notes that Plaintiff offered all four of these documents as exhibits in

23   support of Plaintiff's opposition brief.  *See* ECF No. 222 ("Van Opp. Decl."), Exs. 103, 154, 187,

24   188.  Because these materials are otherwise in the record and Defendants have not properly

25   objected to their admissibility, the Court may still consider these four documents.  *See* Fed. R. Civ.

26   P. 56(c) (providing that, on summary judgment, the court may consider evidence cited by the

27

28   Case No. 14-CV-03791-LHK
     ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY
     JUDGMENT AND GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

United States District Court
Northern District of California

1    parties and "other materials in the record").

2           In support of Defendants' motion for summary judgment, Defendants request judicial

3    notice of (1) documents filed by the parties and orders of the court in Plaintiff's Santa Clara

4    County Superior Court case; (2) documents related to Plaintiff's statement of disqualification

5    against Judge Kirwan, including Judge Kirwan's verified answer; and (3) the complaint, FAC, and

6    the Court's order granting Defendants costs under Rule 41(d) in the instant case.  RJN.  In support

7    of Defendants' opposition to Plaintiff's motion for summary judgment, Defendants request

8    judicial notice of the complaint in the instant case.  ECF No. 220-1 Ex. A.  These documents are

9    all proper subjects of judicial notice.  *See Reyn's Pasta Bella, LLC*, 442 F.3d at 746 n.6 (public

10   court records); *Author Servs., Inc.*, 804 F.2d at 1523 (court's own records); *United States v.*

11   *Ritchie*, 342 F.3d 903, 909 (9th Cir. 2003) (records of administrative bodies).

12          On April 25, 2016, Plaintiff objected that, except for Judge Kirwan's verified answer, the

13   complaint, and the FAC filed in the instant case, Defendants request judicial notice of documents

14   that are "irrelevant."  ECF No. 238.  This objection is overruled.  First, as noted, these documents

15   are all judicially noticeable.  Second, Plaintiff's objection was separately filed in violation of Civil

16   Local Rule 7-3, which requires that "[a]ny evidentiary and procedural objections to the motion [or

17   opposition] must be contained in the brief or memorandum."  Plaintiff provides no explanation as

18   to why Plaintiff waited until April 25, 2016—over a week after the close of briefing on the instant

19   motions—to object to Defendants' request for judicial notice, instead of objecting in Plaintiff's

20   timely-filed opposition and reply briefs.  The Court thus GRANTS Defendants' request for

21   judicial notice.

22   **IV.    DISCUSSION**

23          Plaintiff moves for summary judgment on liability and damages as to all of Plaintiff's

24   claims.  Defendants move for partial summary judgment as to Plaintiff's claims for failure to pay

25   wages, provide meal periods, and provide accurate wage statements to the extent that Plaintiff

26   seeks to recover for violations outside of the applicable statutes of limitations.  Defendants move

27

28
     Case No. 14-CV-03791-LHK
     ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY
     JUDGMENT AND GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

United States District Court
Northern District of California

for summary judgment as to Plaintiff's claims for retaliation, IIED, and breach of contract.  The Court considers each of Plaintiff's claims in turn.

### A.  Unpaid Overtime in violation of the FLSA and California Labor Code

Plaintiff's first cause of action is for failure to pay overtime under the FLSA.  Plaintiff's second cause of action is for failure to pay overtime under the California Labor Code.  Defendants move for partial summary judgment on the basis that the respective statutes of limitations restrict Plaintiff's overtime claims to violations occurring after August 21, 2011.  Plaintiff moves for summary judgment and seeks backpay from 2006 to 2015.  Pl. MSJ at 8–9; Van Opp. Decl. Ex. 188.  The Court first considers the statutes of limitations then the merits.

### 1.  Statutes of Limitations

#### a.  Applicable Limitations Period

##### i.      FLSA

The statute of limitations for FLSA claims is either two or three years depending on the willfulness of the violation.  29 U.S.C. § 255(a).  Suit arising from "a willful violation" of the FLSA "may be commenced within three years after the cause of action accrued."  *Id.*  "A new cause of action accrues at each payday immediately following the work period for which compensation is owed."  *Dent v. Cox Commc'ns Las Vegas, Inc.*, 502 F.3d 1141, 1144 (9th Cir. 2007).  For purposes of the instant motions, Defendants assume that any FLSA violations were willful.  Defs. MSJ at 7.  Accordingly, the statute of limitations applicable to Plaintiff's FLSA claim is three years.

##### ii.      California Labor Code §§ 510, 1194

Plaintiff's claim for unpaid overtime under California Labor Code §§ 510 and 1194 is governed by the three year statute of limitations in Code of Civil Procedure § 338(a).  *See Aubry v. Goldhor*, 201 Cal. App. 3d 399, 404 (1988).  "A cause of action for unpaid wages accrues when the wages first become legally due, i.e., on the regular payday for the pay period in which the employee performed the work; when the work is continuing and the employee is therefore paid

United States District Court
Northern District of California

Case No. 14-CV-03791-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

periodically (e.g., weekly or monthly)[,] a separate and distinct cause of action accrues on each

payday, triggering on each occasion the running of a new period of limitations." *Cuadra v.*

*Millan*, 17 Cal. 4th 855, 859 (1998) (emphasis omitted), *disapproved on other grounds in Samuels*

*v. Mix*, 22 Cal. 4th 1, 16 n. 4 (1999).

### b.  Application to the Instant Case

Plaintiff filed the complaint on August 21, 2014.  Based on the three year statutes of

limitations, Defendants move to limit Plaintiff's recovery for unpaid overtime to violations

occurring after August 21, 2011.[2]  Defs. MSJ at 7–8.  In response, Plaintiff argues that violations

taking place outside of the statute of limitations are actionable "given that there is a pattern of

stealing Plaintiff's wages and given that all of the underpayments constitute one indivisible course

of conduct."  Pl. Opp. at 3.  There are two theories of continuing-wrong to which Plaintiff may be

referring: (1) continuous accrual, and (2) continuing violation.  The Court addresses these theories

in turn.

Under the continuous accrual theory, "a series of wrongs or injuries may be viewed as each

triggering its own limitations period, such that a suit for relief may be partially time-barred as to

older events but timely as to those within the applicable limitations period."  *Aryeh v. Canon Bus.*

*Solutions, Inc.*, 55 Cal. 4th 1185, 1192 (2013).  However, "the theory of continuous accrual

supports recovery only for damages arising from those breaches falling *within the limitations*

*period*."  *See id.* at 1199 (emphasis added) ("[T]he continuing accrual rule effectively limits the

amount of retroactive relief a plaintiff or petitioner can obtain to the benefits or obligations which

came due within the limitations period.").  Thus, continuous accrual provides no support for

---

[2] Plaintiff did not originally assert an FLSA claim in the original complaint in this case, although
Plaintiff did bring a claim for unpaid overtime under California law.  ECF No. 1.  Plaintiff first
asserted an FLSA claim in the FAC, filed on April 22, 2015.  *See* FAC.  Defendants do not dispute
in the briefing on the instant motions that Plaintiff's FLSA claim relates back to the filing of the
original complaint, and both parties assume that the timeliness of Plaintiff's claims should be
determined by the original complaint filed on August 21, 2014.  The Court notes that an
amendment to a pleading relates back when "the amendment asserts a claim . . . that arose out of the
conduct, transaction, or occurrence set out—or attempted to be set out—in the original
pleading."  Fed. R. Civ. P. 15(c).

United States District Court
Northern District of California

1    Plaintiff's request for damages *outside* of the limitations period.  The Court also notes that

2    continuous accrual is a development of California law, and no case cited by Plaintiff applies the

3    continuous accrual theory to a federal cause of action.

4           Unlike continuous accrual, the continuing violation theory "renders an entire course of

5    conduct actionable," including wrongful acts that would otherwise be untimely.  *See id.*  Under

6    both California and federal law, the continuing violation theory aggregates a series of harms into a

7    single cause of action with the statute of limitations running from the date of the last harmful act.

8    *NBCUniversal Media, LLC v. Superior Court*, 225 Cal. App. 4th 1222, 1237 n.10 (2014) (noting

9    that the continuing violation doctrine under California law "applies to aggregate a series of small

10   harms, any one of which may not be actionable on its own, into a single cause of action"); *Pace*

11   *Indus., Inc. v. Three Phoenix Co.*, 813 F.2d 234, 237 (9th Cir. 1987) (stating with regard to a

12   federal cause of action that "[a] continuing violation is one in which the plaintiff's interests are

13   repeatedly invaded" and "the statute runs from the last overt act" of the defendant).  Thus, the

14   continuing violation theory applies under California law when "a wrongful course of conduct

15   [becomes] apparent only through the accumulation of a series of harms" but not when a plaintiff

16   experiences "a series of discrete, independently actionable alleged wrongs."  *Aryeh*, 55 Cal. 4th at

17   1198; *see also Komarova v. Nat'l Credit Acceptance, Inc.*, 175 Cal. App. 4th 324, 343 (2009)

18   (noting that the continuing violation theory applies when violations constitute "a continuing

19   pattern and course of conduct" rather than "unrelated discrete acts").  Under federal law, the

20   continuing violation theory applies when the defendant commits "a new and independent act that

21   is not merely a reaffirmation of a previous act" that "inflict[s] new and accumulating injury on the

22   plaintiff."  *Pace*, 813 F.2d at 238.

23          As noted above, under both the California Labor Code and the FLSA "a separate and

24   distinct cause of action accrues on each payday, triggering on each occasion the running of a new

25   period of limitations."  *Cuadra*, 17 Cal. 4th at 859 (analyzing accrual of California Labor Code

26   claim); *O'Donnell v. Vencor Inc.*, 466 F.3d 1104, 1113 (9th Cir. 2006) (noting that each paycheck

27

28

Case No. 14-CV-03791-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

United States District Court
Northern District of California

1    received is a "separate violation" of the FLSA).  Because each failure to pay overtime wages is

2    independently actionable, both the Ninth Circuit and the California Supreme Court have rejected

3    the application of the continuing violation theory to claims for unpaid wages.

4         Specifically, the Ninth Circuit has stated that "although the [discriminatory pay] may have

5    been continuing, the continuing violation doctrine does not permit [plaintiff] to recover back pay

6    for discriminatory pay periods outside the applicable statute of limitations period."  *O'Donnell*,

7    466 F.3d at 1113 (discussing violations of the Equal Pay Act, an amendment to the FLSA); *see*

8    *also Bartelt v. Berlitz Sch. of Languages of Am., Inc.*, 698 F.2d 1003, 1007 (9th Cir. 1983)

9    (explaining that the FLSA's statute of limitations renders an employer who commits willful

10   violations liable for back pay "for up to three years before suit is filed"); *Dunn v. Teachers Ins. &*

11   *Annuity Ass'n of Am.*, 2016 WL 153266, at *6 (N.D. Cal. Jan. 13, 2016) ("[T]he continuing

12   violations tolling doctrine does not apply to FLSA claims.").

13        Similarly, the California Supreme Court has stated that an action to recover unpaid wages

14   "is timely as to all paydays falling within the relevant limitations period.  For the same reason, in

15   calculating the amount of unpaid wages due in such an action the court will count back from the

16   filing of the complaint to the beginning of the limitations period—e.g., for three years on a

17   statutory liability—and will award all unpaid wages earned during that period."  *Cuadra*, 17 Cal.

18   4th at 859; *see also Aubry*, 201 Cal. App. 3d at 406 ("Accordingly, plaintiff's action [for overtime

19   compensation] was timely filed only as to those paydays within three years prior to

20   commencement of the action.").  Accordingly, the continuing violation theory does not render

21   timely Plaintiff's claims for unpaid overtime accruing before the limitations period.

22        In sum, neither the continuous accrual nor continuing violation theories permit Plaintiff to

23   recover overtime wages for violations of the FLSA or California Labor Code outside the

24   limitations period.  In the instant case, Plaintiff filed the complaint on August 21, 2014.  Under the

25   three year statutes of limitations, Plaintiff may only recover for violations occurring on or after

26   August 21, 2011.  As such, Defendants' motion for partial summary judgment to limit Plaintiff's

27

28   Case No. 14-CV-03791-LHK
     ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY
     JUDGMENT AND GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

1   claim to violations occurring on or after August 21, 2011 is GRANTED.

2   　　　As Defendants recognize, however, Plaintiff may recover unlawfully withheld overtime

3   wages as restitution under the UCL.  *See* Defs. MSJ at 23; *see also Cortez v. Purolator Air*

4   *Filtration Prods. Co.*, 23 Cal. 4th 163, 177 (2000) ("We conclude that orders for payment of

5   wages unlawfully withheld from an employee are also a restitutionary remedy authorized by [the

6   UCL].").  Plaintiff asserts a UCL claim based on Defendants' alleged overtime violations, and

7   thus Plaintiff will get the benefit of the UCL's four year statute of limitations should Plaintiff

8   prevail on her overtime claims.  *See Cortez*, 23 Cal. 4th at 177; *see also Lazaro v. Lomarey Inc.*,

9   2012 WL 566340, at *9, *11 (N.D. Cal. Feb. 21, 2012) (awarding overtime pay as restitution

10  under the UCL).  The Court discusses Plaintiff's UCL claim further in Section IV.G below.

11  　　　**2.  Merits**

12  　　　Pursuant to the FLSA, "no employer shall employ any of his employees . . . for a

13  workweek longer than forty hours unless such employee receives compensation for his

14  employment in excess of [forty hours] at a rate not less than one and one-half times the regular

15  rate at which he is employed."  29 U.S.C. § 207(a)(1).  Similarly, California Labor Code § 510

16  states, in relevant part:

17  　　　Eight hours of labor constitutes a day's work.  Any work in excess of eight hours in
　　　one workday and any work in excess of 40 hours in any one workweek and the first
18  　　　eight hours worked on the seventh day of work in any one workweek shall be
　　　compensated at the rate of no less than one and one-half times the regular rate of
19  　　　pay for an employee.

20  Cal. Lab. Code § 510(a).  California Labor Code § 1194 provides a right to sue for unpaid

21  overtime compensation.  Under both the FLSA and the California Labor Code, employees who

22  receive less than the proper amount of overtime compensation are entitled to recover the unpaid

23  balance of their overtime compensation.  29 U.S.C. § 216(b); Cal. Lab. Code § 1194(a).  The

24  FLSA also permits employees to recover "an additional equal amount as liquidated damages."  29

25  U.S.C. § 216(b).

26  　　　"Under both federal and California law, where an employer's records of the hours an

27

28  Case No. 14-CV-03791-LHK
　　ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY
　　JUDGMENT AND GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

17

United States District Court
Northern District of California

employee worked are inaccurate, the employee carries his burden [to show unpaid overtime] 'if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.'" *Bao Yi Yang v. Shanghai Gourmet, LLC*, 471 F. App'x 784, 787 (9th Cir. 2012) (quoting *Anderson v. Mt. Clemens Pottery*, 328 U.S. 680, 687 (1946), *superseded by statute on other grounds as recognized by Integrity Staffing Solutions, Inc. v. Busk*, 135 S. Ct. 513 (2014)).  The burden then "shifts to the employer to come forward with evidence that either shows the precise amount of work performed or negates the reasonableness of the inferences to be drawn from the employee's evidence." *Id.*  "[W]here the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes . . . [t]he solution . . . is not to penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work." *Mt. Clemens*, 328 U.S. at 687.

To support Plaintiff's claim for unpaid overtime, Plaintiff provides three types of evidence. First, Plaintiff offers a list of days on which Plaintiff asserts that she worked overtime without pay. Van Decl. Ex. 10.  Plaintiff attaches earning statements to the list, some of which do not list any overtime hours and some of which do list overtime hours but, presumably, list insufficient hours.[3] *See id.*

Second, Plaintiff offers a call detail report indicating that Plaintiff's last call ended before 1:00 p.m. on January 25, 2013.  Van Opp. Decl. Ex. 180.  Plaintiff declares that Plaintiff's last call did not end until 1:15 p.m.  Van Decl. ¶ 141.  Even though Plaintiff allegedly should have received overtime pay for 1:00 p.m. to 1:15 p.m., Plaintiff's pay record does not indicate that Plaintiff worked any overtime hours that day.  *See id.* Ex. 24 at 003421.  Nor does Plaintiff's schedule for January 25, 2013 reflect any overtime hours.  *See id.* Ex. 26 at 003210.  Plaintiff

---

[3] Plaintiff asserts that the earnings statements in Exhibit 10 are true and correct copies. Defendants do not dispute the accuracy of these earnings statements.

However, Plaintiff claims that Defendants also produced forged earnings statements in the instant litigation, which Defendants do dispute.  Pl. Opp. at 6; *see also* Van Decl. Ex. 21.  None of the alleged forged earnings statements are material to Plaintiff's overtime claims.

18

1    wrote to Defendants on April 10, 2013 accusing Defendants of fraudulently altering Plaintiff's

2    time records.  Van Opp. Decl. Ex. 181.

3         Third, Plaintiff submits emails between Plaintiff and various employees of Defendants in

4    which Plaintiff complained of working overtime without pay.  *See* Van Decl. Exs. 14 (June 2,

5    2011 email from Plaintiff noting seven days from March to May 2011 in which Plaintiff was not

6    paid overtime), 16 (May 26, 2012 email from Plaintiff to Bloomer noting that "many times during

7    the past year" Plaintiff had not been paid for overtime), 31 (February 19, 2013 email from Plaintiff

8    to Bloomer noting "the many issues with regards to my unpaid wages, including overtime, regular

9    hours, lunch, and break"); Van Opp. Decl. Ex. 119 (February 23, 2013 letter from Plaintiff to

10   Bloomer reminding Bloomer that Plaintiff had raised the issue of "numerous overtime" in May

11   2012).  In one email, Plaintiff specifically asserted that "[m]y schedule was not accurate on Impact

12   360."  Van Decl. Ex. 14.  Plaintiff suggests that Gwyn Allison ("Allison"), an administrative

13   assistant who had some management of Plaintiff's schedule, was terminated as a result of one of

14   Plaintiff's emails so that Defendants could "distance themselves from labor-law violations Allison

15   had committed as their corporate agent."  Pl. Opp. at 8; *see also* Van Opp. Decl. Ex. 140 (June 6,

16   2012 email from a Language Line employee to Plaintiff stating that Allison no longer worked for

17   Defendants); Bloomer Depo. at 13 (explaining Allison's position).

18        Defendants dispute Plaintiff's evidence and contend that there is a dispute of material fact

19   regarding whether Plaintiff actually worked overtime for which she was not properly

20   compensated.  Defendants specifically argue that Plaintiff's earnings statements reveal that she

21   received overtime pay, and claim that Plaintiff's evidence of unpaid overtime is conclusory and

22   speculative.  Defs. Opp. at 4.  For example, Defendants highlight that Plaintiff asserts that Plaintiff

23   was not compensated for overtime from May 13, 2012 to May 26, 2012 while Plaintiff's

24   contemporaneous earnings statements indicate that Plaintiff was paid for overtime on those days.

25   *Id.* at 3.  Defendants also deny that Plaintiff reported to Defendants the "labor law violations" of

26   Allison, an administrative assistant who had some management of Plaintiff's schedule, and

27

28   Case No. 14-CV-03791-LHK
     ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY
     JUDGMENT AND GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

United States District Court
Northern District of California

19

correctly point out that no email from Plaintiff mentions Allison by name.

In adjudicating motions for summary judgment, the Court "does not assess credibility or weigh the evidence, but simply determines whether there is a genuine factual issue for trial." *House*, 547 U.S. at 559–60.  With this standard in mind, the Court agrees that there is a dispute of material fact regarding whether Plaintiff worked overtime without compensation.  Relying on the earnings statements showing that Plaintiff was compensated for numerous overtime hours, a reasonable jury could find that Plaintiff was properly compensated for overtime worked.  Alternatively, based on Plaintiff's testimony about the days on which Plaintiff worked overtime hours without compensation and Plaintiff's repeated emails to Defendants about unpaid overtime, a reasonable jury could conclude that Plaintiff performed overtime work for which she was not compensated.  Because triable issues of fact exist as to overtime compensation, the Court DENIES Plaintiff's motion for summary judgment on Plaintiff's unpaid overtime claims under the FLSA and California Labor Code §§ 510 and 1194.

Although triable issues of fact preclude summary judgment, the Court addresses Defendants' two legal arguments against summary judgment in anticipation that this case may proceed to trial.  First, Defendants argue that Plaintiff is not entitled to recover for any unpaid overtime because Plaintiff failed to timely report missed overtime in accordance with Defendants' policies.  Defs. Opp. at 2.  Defendants' policies provide that an employee must call the Interpreter Hotline if the employee's schedule does not reflect approved overtime, and an employee should report missing time to the operations department if the employee believes that she worked overtime that was not compensated.  *See* Van Depo. at 140; Sadler Depo. at 42.

This argument is unpersuasive.  Defendants are correct that only "[a]n employer who knows or should have known that an employee is or was working overtime must" pay overtime compensation pursuant to the FLSA and the California Labor Code.  *Forrester v. Roth's I.G.A. Foodliner, Inc.*, 646 F.2d 413, 414 (9th Cir. 1981) (finding employer's actual or constructive knowledge of overtime work is required under the FLSA); *Jong v. Kaiser Found. Health Plan,*

Case No. 14-CV-03791-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

United States District Court
Northern District of California

*Inc.*, 226 Cal. App. 4th 391, 395–36 (2014) (discussing *Forrester* and noting that an employer must have actual or constructive knowledge that an employee was working overtime in order to violate California Labor Code § 1194); *see also Morillion v. Royal Packing Co.*, 22 Cal. 4th 575, 585 (2000) (citing *Forrester* favorably).  However, Defendants point to no authority indicating that the only way an employer may gain knowledge of an employee's unpaid overtime is if the employee follows the employer's formal policies for reporting missing time.  Indeed, the Ninth Circuit has held that "[a]n employer who is armed with this knowledge cannot stand idly by and allow an employee to perform overtime work without proper compensation, *even if the employee does not make a claim for the overtime compensation*."  *Forrester*, 646 F.2d at 414 (emphasis added).  Thus, any failure to report missed overtime in accordance with Defendants' policies does not preclude Plaintiff's overtime claims as a matter of law.  Rather, Plaintiff may recover on the overtime claim so long as Defendants "kn[ew] or should have known that [Plaintiff] is or was working overtime."  *Id.*

Here, Plaintiff points to numerous emails in which she reported to Defendants that she had worked overtime hours without pay.  Van Decl. Exs. 14, 16, 31.  Based on these emails, a reasonable jury could find that Defendants knew, or should have known, that Plaintiff worked overtime for which Plaintiff was not compensated.  Consequently, there is a disputed issue of fact as to whether Defendants were aware of Plaintiff's overtime hours even if Plaintiff did not report those hours in accordance with Defendants' formal policies.

As to Defendants' second argument, Defendants contend that they conducted an audit of Plaintiff's records and paid Plaintiff in 2016 for all previously unpaid overtime.  Defs. Opp. at 3.  However, Plaintiff declares that the 2016 payments covered only some of the overtime that Plaintiff worked in 2010 and 2011.  Van Decl. ¶ 10.  Plaintiff's emails to Defendants could support a reasonable jury's determination that Plaintiff worked uncompensated overtime after 2011.  *See id.* Exs. 16 (May 26, 2012 email from Plaintiff to Bloomer noting that "many times during the past year" Plaintiff had not been paid for overtime); 31 (February 19, 2013 email from

Case No. 14-CV-03791-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

United States District Court
Northern District of California

1    Plaintiff to Bloomer noting "the many issues with regards to my unpaid wages, including

2    overtime, regular hours, lunch, and break").  Thus, whether the 2016 payments compensated

3    Plaintiff for all unpaid overtime is a triable issue of fact.

4          Moreover, the Ninth Circuit has held in the context of minimum wages that "payment must

5    be made on payday, and that a late payment immediately becomes a violation equivalent to non-

6    payment." *Rother v. Lupenko*, 515 F. App'x 672, 675 (9th Cir. 2013) (citing *Biggs v. Wilson*, 1

7    F.3d 1537, 1540–43 (9th Cir. 1993)).  The Ninth Circuit explained that, once a cause of action

8    accrues, an employee has a right to recover under the FLSA regardless of whether a later payment

9    is made, in part because the FSLA provides for liquidated damages and prejudgment interest in

10   addition to recovery of unpaid wages.  *Biggs*, 1 F.3d at 1541.  Liquidated damages are awarded if

11   the employer did not act in good faith while prejudgment interest is mandatory in the absence of

12   liquidated damages.  *See id.* at 1540; 29 U.S.C. § 260 (good faith exception to liquidated

13   damages).  In the instant case, Defendants never assert that the 2016 payments to Plaintiff

14   included either liquidated damages or interest.  Thus, even if Defendants' 2016 payments

15   compensated Plaintiff for all of the overtime wages that Plaintiff was owed, late payment still

16   violates the FLSA and Defendants may owe Plaintiff liquidated damages or interest.

17         Defendants argue that late payment of overtime wages satisfies the FLSA and that *Biggs* is

18   inapposite because *Biggs* addressed minimum wages.  However, Defendants provide no reason to

19   distinguish between minimum and overtime wages for the purposes of whether late payment

20   satisfies Defendants' obligations under the FLSA.  Indeed, the *Biggs* court noted that "the

21   provisions for [FLSA] liability apply to overtime as well as to a minimum wage." *Biggs*, 1 F.3d at

22   1539 & n.7.  Additionally, like a cause of action for unpaid minimum wages, a cause of action for

23   unpaid overtime wages "accrues at each payday immediately following the work period for which

24   compensation is owed." *Dent*, 502 F.3d at 1144.  Accordingly, *Bigg*'s reasoning applies equally

25   to overtime compensation, as another district court in this district has already found. *Keating-*

26   *Traynor v. AC Square, Inc.*, 2008 WL 3915169, at *2 (N.D. Cal. Aug. 22, 2008) (concluding that

27

28   Case No. 14-CV-03791-LHK
     ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY
     JUDGMENT AND GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

United States District Court
Northern District of California

late payment of overtime compensation is a violation of the FLSA); *see also United States v.*

*Klinghoffer Bros. Realty Corp.*, 285 F.2d 487, 491 (2d Cir. 1960) (noting FLSA requires "prompt

payment" of overtime compensation).  Consequently, as stated above, even if Defendants did pay

Plaintiff in 2016 for previously uncompensated overtime wages, Defendants' late payment would

still constitute a violation of the FLSA, and Defendants may owe Plaintiff liquidated damages or

interest.  *See Biggs*, 1 F.3d at 1540–43.

### B.  Unpaid Meal and Rest Period Wages

Plaintiff's third cause of action is for failure to provide breaks and meal periods in

accordance with California Labor Code §§ 226.7 and 512.  Defendants move for partial summary

judgment on the basis that Plaintiff's claim is limited to three years.  Plaintiff cross moves for

summary judgment and asks for attorney's fees and interest pursuant to California Labor Code

§§ 218.5 and 218.6.  The Court first addresses the statute of limitations and then the merits.

Because the Court finds that summary judgment is warranted as to certain breaks and meal

periods, the Court also addresses damages.

### 1.  Statute of Limitations

Claims for unpaid breaks and meal periods under California law are governed by the three

year statute of limitations in Code of Civil Procedure § 338(a).  *See Murphy v. Kenneth Cole*

*Prods., Inc.*, 40 Cal. 4th 1094, 1114 (2007).  Such claims accrue upon the employer's "failure to

provide required meal and rest breaks."  *Kirby v. Immoos Fire Protection, Inc.*, 53 Cal. 4th 1244,

1255, 1256–57 (2012) ("[S]ection 226.7 defines a legal violation solely by reference to an

employer's obligation to provide meal and rest breaks.").  Because it appears that each missed

break and meal period is independently actionable, Plaintiff may recover for each violation

occurring within the three years prior to Plaintiff's complaint.  *See Delgado v. Deanda*, 2011 WL

7946405, at *3 (N.D. Cal. Nov. 23, 2011) (permitting plaintiffs to recover for all unpaid missed

meal periods within the limitations period).  Plaintiff filed the complaint on August 21, 2014.

Thus, violations occurring prior to August 21, 2011 are untimely, and Defendants' motion for

Case No. 14-CV-03791-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

United States District Court
Northern District of California

partial summary judgment is GRANTED.

Nevertheless, as with Plaintiff's claims for overtime compensation, Defendants recognize that Plaintiff may recover payments for missed breaks and meal periods as restitution under the UCL.  *See* Defs. MSJ at 23; *see also Lopez v. United Parcel Serv., Inc.*, 2010 WL 728205, at *10 (N.D. Cal. Mar. 1, 2010) (holding that payments for missed meal and rest periods are recoverable under the UCL); *Valenzuela v. Giumarra Vineyards Corp.*, 614 F. Supp. 2d 1089, 1103 (E.D. Cal. 2009) (same).  Accordingly, Plaintiff may avail herself of the UCL's four year statute of limitations should Plaintiff prevail on this claim.  Plaintiff's UCL claim is discussed further in Section IV.G below.

### 2. Merits

Defendants' substantive meal and rest period duties are "governed by two complementary and occasionally overlapping sources of authority: the provisions of the [California] Labor Code, enacted by the Legislature, and a series of 18 wage orders, adopted by the [Industrial Welfare Commission ("IWC")]."  *Brinker Restaurant Corp. v. Superior Court*, 53 Cal. 4th 1004, 1026 (2012).  Specifically, California Labor Code § 226.7(b) provides that "[a]n employer shall not require an employee to work during a meal or rest or recovery period mandated pursuant to an applicable statute, or applicable regulation, standard, or order of the Industrial Welfare Commission . . . ."  "If an employer fails to provide an employee a meal or rest or recovery period in accordance with a state law . . . the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest or recovery period is not provided."  Cal. Lab. Code § 226.7(c).

Plaintiff asserts that she is covered by IWC Wage Order No. 4 ("Order Regulating Wages, Hours and Working Conditions in Professional, Technical, Clerical, Mechanical, and Similar Occupations"), Pl. MSJ at 10, which Defendants do not dispute, *see* Defs. Opp. at 7.  Pursuant to this wage order, employees are entitled to an unpaid thirty minute meal period after working for five hours and a paid ten minute rest period per four hours of work or "major fraction thereof."

Case No. 14-CV-03791-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

United States District Court
Northern District of California

1   Cal. Code Regs. tit. 8, § 11040(11)–(12); *see also* Cal. Lab. Code § 512(a) ("An employer may not

2   employ an employee for a work period of more than five hours per day without providing the

3   employee with a meal period of not less than 30 minutes."). Thus, it is undisputed that state law

4   entitles Plaintiff to one 30 minute meal period and two ten minute rest periods each day in which

5   Plaintiff works eight hours.

6         In *Brinker Restaurant Corp. v. Superior Court*, the California Supreme Court held that an

7   employer satisfies the obligation to provide meal breaks "if it relieves its employees of all duty,

8   relinquishes control over their activities and permits them a reasonable opportunity to take an

9   uninterrupted 30-minute break, and does not impede or discourage them from doing so." 53 Cal.

10  4th at 1040. "[T]he employer is not obligated to police meal breaks and ensure no work thereafter

11  is performed," but "may not undermine a formal policy of providing meal breaks by pressuring

12  employees to perform their duties in ways that omit breaks." *Id.* A similar standard governs rest

13  breaks. *Faulkinbury v. Boyd & Assocs., Inc.*, 216 Cal. App. 4th 220, 236 (2013) (noting that an

14  employer is required to "authorize and permit the [rest] break or pay the employee one hour of pay

15  at the employee's regular rate for each workday the rest break is not provided"); *Lanzarone v.*

16  *Guardsmark Holdings, Inc.*, 2006 WL 4393465, *6 (C.D. Cal. 2006) ("Under California law, rest

17  periods need only be authorized and permitted, they need not be enforced or actually taken.").

18        Justice Werdegar, concurring in *Brinker*, emphasized that the IWC wage orders also

19  require employers to record meal periods. Thus, Justice Werdegar stated that "[i]f an employer's

20  records show no meal period for a given shift over five hours, a rebuttable presumption arises that

21  the employee was not relieved of duty and no meal period was provided." *Brinker*, 53 Cal. 4th at

22  1053 (Werdegar, J., concurring). Relying on Justice Werdegar, a number of federal district courts

23  in this circuit have adopted such a rebuttable presumption because "[o]therwise, employers would

24  have an incentive to ignore their recording duty, leaving employees the difficult task of proving

25  that the employer either failed to advise them of their meal period rights, or unlawfully pressured

26  them to waive those rights." *See, e.g.*, *Brewer v. Gen. Nutrition Corp.*, 2014 WL 5877695, at *7

27

28

25

Case No. 14-CV-03791-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

United States District Court
Northern District of California

(N.D. Cal. Nov. 12, 2014) (quoting *Ricaldai v. U.S. Investigations Servs., LLC*, 878 F. Supp. 2d 1038, 1044 (C.D. Cal. 2012)).

In the instant case, Plaintiff claims both that Defendants often forced Plaintiff to work through scheduled breaks and meal periods and that Defendants often failed to schedule breaks and meal periods.  In support of Plaintiff's contention that Defendants forced her to work through scheduled breaks, Plaintiff cites an email that Plaintiff wrote to Bloomer on January 21, 2013, which stated that Plaintiff "received coaching" about her work performance during her scheduled break that day.  Van Decl. Ex. 29 at 000761; *id.* at 000766 (Plaintiff's schedule from Impact 360 indicating break was scheduled).  However, Plaintiff's wage statement for the week of January 21, 2013 does not reflect any compensation for the missed break period.  Van Decl. Ex. 24 at 003421.  Plaintiff asserts that she was "often required to attend company meetings or coaching, without compensation, during [her] breaks and [her] personal time."  Van Decl. ¶ 31.

To support her assertion that Defendants often failed to schedule Plaintiff with meal or rest breaks, Plaintiff provides Plaintiff's personal schedules from Impact 360, accessed on March 21, 2013.  *Id.* Ex. 26.[4]  As noted above, Impact 360 is a schedule management system that shows Plaintiff when to take breaks, lunch, and work.  Van Depo. at 30–31.  During a scheduled break, the system blocks incoming calls so that Plaintiff does not receive calls to interpret.  *Id.* at 34–35.  However, if for some reason a break is not scheduled in Impact 360, Plaintiff must request a break from Plaintiff's supervisor.  *Id.* at 47.  Plaintiff offers evidence that on at least one occasion, February 10, 2012, Plaintiff's supervisor ignored Plaintiff's request for a break.  Van Depo. at 47.

---

[4] Plaintiff claims that the schedules in Exhibit 26 are true and correct copies of Plaintiff's schedules from May 2, 2010 to March 29, 2013.  *See* Van Decl. ¶ 87.  Plaintiff printed these schedules on March 21, 2013.  As Defendants do not dispute the accuracy of these schedules, the Court relies on Exhibit 26.

Plaintiff printed schedules covering the same time period again on September 14, 2013, and a third time on July 19, 2015.  Van Decl. Ex. 27 (schedules dated September 14, 2013); *id.* ¶ 86, Ex. 25 (schedules dated July 19, 2015).  Plaintiff claims that the July 19, 2015 version of the schedules differs from the earlier-printed schedules, and accuses Defendants of forging the July 19, 2015 version of the schedules.  However, none of the differences among the versions of Plaintiff's schedules are material to Plaintiff's claims for missed meal periods and rest breaks.

Case No. 14-CV-03791-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

1   On May 26, 2012, Plaintiff complained to Bloomer that Plaintiff's lunch and rest breaks were not

2   being properly scheduled.  Van Decl. Ex. 16.

3         Plaintiff offers her schedule from Impact 360 for every day from May 2, 2010 to March

4   29, 2013.  For example, Plaintiff's schedule for Wednesday, November 16, 2011 reads:

5         NTEST        4:30 AM – 6:30 AM
      Break          6:30 AM – 6:45 AM

6         Immediate    6:45 AM – 7:30 AM
      KTEST        7:30 AM – 8:00 AM

7         Lunch          8:00 AM – 8:30 AM
      KTEST        8:30 AM – 10:00 AM

8         NTEST        10:00 AM – 12:00 PM
      Break          12:00 PM – 12:15 PM

9         KTEST        12:15 PM – 1:00 PM

10  By comparison, Plaintiff's schedule for Thursday, November 17, 2011 reads:

11        Immediate    4:30 AM – 6:00 AM
      Break          6:00 AM – 6:15 AM

12        Immediate    6:15 AM – 7:00 AM
      ETEST        7:00 AM – 7:30 AM

13        Lunch          7:30 AM – 8:00 AM
      ETEST        8:00 AM – 9:30 AM

14        KTEST        9:30 AM – 12:30 PM
      Immediate    12:30 PM – 1:00 PM

15        Van Decl. Ex. 26.  As is apparent from the face of the second schedule, Plaintiff was

16  scheduled for only one "Break" on Thursday, November 17, 2011 even though Plaintiff worked

17  for eight hours.  A review of Plaintiff's Impact 360 schedules from October 7, 2010 to August 19,

18  2011 reveal 69 days on which only one "Break" was scheduled as well as one day (June 7, 2011)

19  in which only one "Break" and no "Lunch" was scheduled.  *See id.*  Additionally, there are 61

20  instances after August 21, 2011 (the start of the limitations period) in which one of the two

21  required breaks or one required meal period was not scheduled.  *See id.*  On two additional

22  occasions during that time period, Plaintiff was not scheduled for either of the two required

23  breaks.  *See id.* (schedules for November 4, 2011 and March 9, 2012).

24        In opposition to summary judgment, Defendants argue that Defendants "conducted an

25  audit of Plaintiff's claimed unpaid wages and paid her for the hours that were missing. . . . Thus,

26  there are no unpaid wages for which Plaintiff is owed."  Defs. Opp. at 7.  However, the California

27                            27

28

United States District Court
Northern District of California

United States District Court
Northern District of California

1  Supreme Court has stated that "section 226.7 does not give employers a lawful choice between

2  providing *either* meal and rest breaks *or* an additional hour of pay.  An employer's failure to

3  provide an additional hour of pay does not form part of a section 226.7 violation, and an

4  employer's provision of an additional hour of pay does not excuse a section 226.7 violation.  The

5  failure to provide required meal and rest breaks is what triggers a violation of section 226.7."

6  *Kirby*, 53 Cal. 4th at 1256–57 ("[S]ection 226.7 defines a legal violation solely by reference to an

7  employer's obligation to provide meal and rest breaks.").  Accordingly, even if Defendants later

8  paid Plaintiff for missed meal and rest periods, Defendants would still be liable for violating

9  section 226.7.

10  Defendants also argue that "Plaintiff fails to meet her burden to demonstrate that she

11  actually worked through those breaks and that she was not paid for that time."  Defs. Opp. at 7.

12  Defendants note that, although Impact 360 is used "for scheduling purposes," Impact 360 "is not

13  used for payroll purposes."  Sadler Decl. ¶ 3.  Defendants point to Defendants' policy on missed

14  breaks, which instructs employees to stop working and call the Interpreter Hotline if the employee

15  is on "a call that runs into your originally scheduled break time" and the system fails to

16  automatically adjust the scheduled break time.  *See* ECF No. 220-12 (Defendants' policy for

17  "Managing Your Attendance and Schedule Attendance").

18  As to Plaintiff's claim that Plaintiff was forced to work through scheduled breaks and meal

19  periods, the Court agrees that a triable issue of fact exists as to whether Plaintiff was not provided

20  the required breaks and meal periods.  A reasonable jury could credit testimony by Plaintiff and

21  emails in which Plaintiff claimed that she was forced to work through breaks and meal periods.

22  However, a reasonable jury could also credit Plaintiff's schedules in Impact 360 showing that the

23  required breaks and meal periods were authorized and that Defendants' policy encouraged

24  employees to take all scheduled breaks.  *See House*, 547 U.S. at 559–60 (noting that, at summary

25  judgment, the court "does not assess credibility or weigh the evidence, but simply determines

26  whether there is a genuine factual issue for trial").  The Court also notes that, while Plaintiff

28

1    asserts that she was "often" forced to work through breaks, Plaintiff provides little evidence

2    indicating the frequency with which this occurred.

3            As to Plaintiff's claim that Defendants often failed to schedule Plaintiff for required breaks

4    and meal periods, however, the Court finds that Defendants fail to raise a genuine factual dispute.

5    In Plaintiff's deposition, Plaintiff testified that Impact 360 sets forth when Plaintiff may take

6    breaks and meal periods and that Impact 360 automatically enforces scheduled breaks by blocking

7    calls to interpret.  Van Depo. at 30–31, 34–35, 46–47.  From October 7, 2010 to August 19, 2011,

8    Plaintiff's Impact 360 schedules reveal 70 days on which Plaintiff was not scheduled for two

9    breaks and one meal period for each day over eight hours.  *See* Van Decl. Ex. 26.  Similarly, on 63

10   days from August 21, 2011 to October 17, 2012, Plaintiff was scheduled in Impact 360 to work

11   without one or more "Break" or "Lunch" periods per eight hour day.  Defendants do not contend

12   that Impact 360 inaccurately reflects Plaintiff's schedule or that breaks or meal periods were

13   authorized at times other than those listed as "Break" or "Lunch" in Impact360.  Nor do

14   Defendants object to the admissibility of these schedules in Defendants' procedurally improper

15   objections to Plaintiff's evidence.  *See* ECF No. 220-16.

16           Defendants only response is that Plaintiff fails to show that Plaintiff did not take breaks or

17   meal periods in contravention of Plaintiff's schedule.  However, "if a break is not authorized, an

18   employee has no opportunity to decline to take it."  *Brinker*, 53 Cal. 4th at 1033.  In addition, "[i]f

19   an employer's records show no meal period for a given shift over five hours, a rebuttable

20   presumption arises that the employee was not relieved of duty and no meal period was provided."

21   *Id.* at 1053 (Werdegar, J., concurring); *see also Brewer*, 2014 WL 5877695, at *7 (applying

22   rebuttable presumption); *Ricaldai*, 878 F. Supp. 2d at 1043–44 (same).  As discussed, Plaintiff's

23   Impact 360 schedules show that two breaks and one meal period were not scheduled on 133 days

24   from October 7, 2010 to October 17, 2012.

25           In addition, although company policy instructed interpreters to stop working if Impact 360

26   failed to adjust the start of a scheduled break when necessary, Defendants point to no part of the

27

28   Case No. 14-CV-03791-LHK
     ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY
     JUDGMENT AND GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

United States District Court
Northern District of California

29

1    policy informing employees that employees are entitled to take two breaks and one lunch period

2    per eight hour day, even if not scheduled.  In fact, Defendants' policy notes that "it is important

3    that you adhere to your scheduled rest and meal breaks.  Breaks are scheduled for you based on

4    the length of your shift and line coverage.  Breaks cannot be delayed or taken early in order to

5    lengthen your long break."  ECF No. 220-12.  The policy also states that "unscheduled breaks"

6    may be taken only "for those rare times a need arises that cannot wait until a scheduled break or

7    the end of your shift."  *Id.*  In the absence of evidence demonstrating that Defendants authorized

8    break and meal periods in contravention of Plaintiff's schedule, Defendants' "bald assertion that a

9    genuine issue of material fact exists" does not preclude summary judgment.  *Harper v.*

10   *Wallingford*, 877 F.2d 728, 731 (9th Cir. 1989).

11       In light of the foregoing, the Court DENIES summary judgment as to Plaintiff's claim that

12   Plaintiff was forced to work through scheduled breaks and meal periods.  The Court GRANTS

13   partial summary judgment to Plaintiff as to Defendants' liability for the instances where Impact

14   360 shows that Defendants failed to schedule two breaks and one meal period per eight hour day.

15   The Court next considers whether summary judgment is warranted as to Plaintiff's requested

16   damages.

17       **3.  Damages**

18       Plaintiff requests damages pursuant to section 226.7, as well as compensation for jury duty

19   that Defendants allegedly failed to pay in accordance with Defendants' policy.  Plaintiff also seeks

20   attorney's fees and interest pursuant to California Labor Code §§ 218.5 and 218.6.  The Court

21   addresses these damages respectively.

22       Section 226.7 provides that "[i]f an employer fails to provide an employee a meal or rest or

23   recovery period in accordance with a state law . . . the employer shall pay the employee one

24   additional hour of pay at the employee's regular rate of compensation for each workday that the

25   meal or rest or recovery period is not provided."  Cal. Lab. Code § 226.7; *see also* Cal. Code Regs.

26   tit 8, § 11040(11)(B), 12(B) (providing, in separate sections, that an additional hour of pay is

28   Case No. 14-CV-03791-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

United States District Court
Northern District of California

required for violations of meal period requirements and violations of rest period requirements).

Defendants contend that Plaintiff's "regular rate of compensation" is $16.05, Plaintiff's hourly rate

from 2010 to the present.  Defs. Opp. at 8.  Although Plaintiff concedes that Plaintiff's hourly rate

is $16.05, Plaintiff asserts that the $16.05 rate should be increased in accordance with the annual

raises that Plaintiff should have received under Plaintiff's 1997 employment contract.  Pl. Reply at

5; *see also* Van Decl. Ex. 63 at 005233 (damages calculations); Van Opp.  Decl. Ex. 188

(amended damages calculations).

Essentially, Plaintiff seeks to bootstrap breach of contract damages to Plaintiff's section

226.7 claim.  *See Erlich v. Menezes*, 21 Cal. 4th 543, 550 (1999) ("In an action for breach of

contract, the measure of damages is 'the amount which will compensate the party aggrieved for all

the detriment proximately caused thereby, or which, in the ordinary course of things, would be

likely to result therefrom . . . .'" (quoting Cal. Civ. Code § 3300)).  Plaintiff points to no authority

permitting such recovery and the Court concludes that recovery for Defendants' alleged breach of

contract must be sought through a breach of contract claim.  *Cf. Byrd v. Masonite Corp.*, 2016 WL

2593912, at *5 (C.D. Cal. May 5, 2016) (using putative class members' average hourly wage to

determine amount in controversy for break and meal period violations under section 226.7);

*Bradescu v. Hillstone Restaurant Grp.*, 2014 WL 5312546, at *7–8 (C.D. Cal. Sept. 18, 2014)

(finding that "regular rate of compensation" under section 226.7 included the employee's hourly

rate and need not include all remuneration for employment, such as bonuses, gratuities, or free

meals).  Accordingly, Plaintiff's regular rate of compensation is $16.05 per hour.

Plaintiff has proven 71 instances of break and meal period violations occurring before

August 21, 2011: 69 days on which Plaintiff was scheduled for only one "Break" and one day

(June 7, 2011) on which Plaintiff was scheduled for only one "Break" and no "Lunch."  *See* Van

Decl. Ex. 26.  Because these violations occurred before the three year limitations period, these

violations are untimely, and Plaintiff may not recover damages under the California Labor Code.

These violations are discussed with respect to Plaintiff's UCL claim in Section IV.G below.

Case No. 14-CV-03791-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

United States District Court
Northern District of California

1    Plaintiff has also proven 65 instances of break and meal period violations during the

2    limitations period: 61 days on which Plaintiff was denied one break or meal period and 2 days

3    Plaintiff was denied both rest breaks.  The California Court of Appeal has found that employees

4    "may recover up to two additional hours of pay on a single work day for meal period and rest

5    period violations—one for failure to provide a meal period and another for failure to provide a rest

6    period."  *United Parcel Serv., Inc. v. Superior Court*, 196 Cal. App. 4th 57, 70 (2011).  However,

7    employees may not recover two additional hours of pay for failure to provide two breaks in the

8    same day.  *See id.* at 60 (noting only one premium payment is permitted for each type of violation,

9    rest breaks or meal periods); *see also Marlo v. Untied Parcel Serv., Inc.*, 2009 WL 1258491, at *7

10   (C.D. Cal. May 5, 2009) ("[I]f more than one rest period violation occurs in a single work day but

11   no meal period violations occur, [plaintiff] may only recover one additional hour of pay for all of

12   the rest period violations combined . . . .").  Accordingly, the Court finds that Plaintiff may

13   recover an additional hour of pay for 63 days in which at least one break or meal period was not

14   provided as required by law.  Multiplied by Plaintiff's regular rate of compensation, Plaintiff is

15   entitled to $1,011.15 in "additional hour[s] of pay" based on Defendants' failure to provide the

16   required break and meal periods from August 21, 2011 to October 17, 2012.

17   A disputed issue of material fact remains, however, as to whether Defendants "conducted

18   an audit of Plaintiff's claimed unpaid wages and paid her for the hours that were missing."  Defs.

19   Opp. at 7.  Plaintiff counters that Defendants only paid Plaintiff backpay for some overtime

20   violations occurring in 2010 and 2011.  Van Decl. ¶ 10.  Thus, there is a triable issue of fact as to

21   whether Defendants' 2016 payment compensated Plaintiff for all of the "additional hour[s] pay" to

22   which Plaintiff is entitled.

23   The Court notes that Plaintiff seeks to recover as damages compensation allegedly owed

24   for unpaid jury duty.  Pl. MSJ at 9.  Plaintiff fails to identify the legal basis for this recovery, and it

25   is not apparent that section 226.7 or IWC Wage Order No. 4 require compensation for jury duty.

26   However, Defendants do not move for summary judgment on this issue, and the Court has already

27

28

United States District Court
Northern District of California

1   found that a triable issue exists as to damages.  Because disputed issues of material fact exist as to

2   damages, the Court DENIES summary judgment as to damages pursuant to section 226.7.

3          Plaintiff asks for attorney's fees and interest in addition to the additional hour of pay per

4   violation.  California Labor Code § 218.5 authorizes an award of attorney's fees to the prevailing

5   party in an "action brought for nonpayment of wages."  The California Supreme Court has

6   explicitly held that attorney's fees under section 218.5 are not available for the pursuit of section

7   226.7 claims for missed breaks and meal periods because "a section 226.7 claim is not an action

8   brought for nonpayment of wages; it is an action brought for non-provision of meal or rest

9   breaks." *Kirby*, 53 Cal. 4th at 1255–57.  Similarly, California Labor Code § 218.6 authorizes

10  interest "on all due and unpaid wages" for "any action brought for the nonpayment of wages."

11  According to the California Supreme Court's reasoning in *Kirby*, interest is not available for a

12  section 226.7 claim because this claim is not an "action brought for the nonpayment of wages."

13  *Kirby*, 53 Cal. 4th at 1257.  Accordingly, both California statute and case law do not authorize an

14  award of attorney's fees or interest for section 226.7 violations.

15      **C.  California Labor Code § 226**

16         Plaintiff's fourth cause of action is for failure to provide accurate itemized wage statements

17  in violation of California Labor Code § 226(a) and failure to permit timely inspection of records in

18  violation of California Labor Code § 226(c).  Pl. MSJ at 11.  Defendants move for partial

19  summary judgment on the basis that Plaintiff's section 226(a) claim for inaccurate wage

20  statements is limited to one year.  Defs. MSJ at 10–11.  In addition, Defendants move for

21  summary judgment on the basis that Plaintiff's section 226(c) claim for failure to permit

22  inspection of records is time barred.  *Id.*  Plaintiff moves for summary judgment on both claims.

23  The Court begins with the applicable statute of limitations.

24      **1.  Statute of Limitations**

25         The statute of limitations applicable to claims under section 226 is dependent on the

26  remedy sought.  An employee may recover either actual damages or statutory penalties for

27

28  Case No. 14-CV-03791-LHK
    ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY
    JUDGMENT AND GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

United States District Court
Northern District of California

violations of section 226(a), and statutory penalties for violations of section 226(c).  *See* Cal. Lab.

Code § 226(e)(1) (noting the employee may recover $50 for "the initial pay period in which a

violation [of section 226(a)] occurs" and $100 "for each violation in a subsequent pay period"); *id.*

§ 226(f) (providing for $750 penalty for a violation of section 226(c)).  "When a plaintiff is

seeking actual damages, the three year statute of limitations applies, but when a plaintiff is seeking

statutory penalties, the one-year statute of limitations applies."  *Mouchati v. Bonnie Plants, Inc.*,

2014 WL 1661245, at *8 (C.D. Cal. Mar. 6, 2014).  Because Plaintiff is solely claiming statutory

penalties, *see* Pl. MSJ at 11; Van Decl. Ex. 63, California's one year statute of limitations applies,

*Elliot*, 368 F. App'x at 764; *Murphy*, 40 Cal. 4th at 1119.

Plaintiff filed the complaint on August 21, 2014.  Under the one year statute of limitations,

Plaintiff may recover only for violations of section 226(a) or (c) occurring on or after August 21,

2013.[5]  *See Garnett v. ADT LLC*, 2015 WL 5896065, at *1, *10 (E.D. Cal. Oct. 6, 2015) (finding

defendant violated section 226(a) and granting summary judgment for plaintiff on claims within

the one year limitations period); *Nguyen v. Baxter Healthcare Corp.*, 2011 WL 6018284, at *9

(C.D. Cal. Nov. 26, 2011) (noting that the statute of limitations "applies to limit her wage

statement claim to wage statements provided on or after August 23, 2009, which is a year before

she filed her complaint").

As to Plaintiff's claim under section 226(a) for inaccurate wage statements, Plaintiff

counters that Defendants "are not entitled to a one-year statute of limitation because on October

26, 2015, Defendants provided to Van inaccurate itemized wage statements from Van's personnel

files."  If Plaintiff intends by this statement to assert the continuing violation theory, the Court

---

[5] In the original complaint in the instant case, Plaintiff offered factual allegations regarding the
violation of both sections 226(a) and 226(c). ECF No. 1.  However, Plaintiff's original complaint
only asserted a cause of action for the violation of section 226(c).  Plaintiff first asserted a claim
for inaccurate wage statements in violation of section 226(a) in the FAC, filed on April 22, 2015.
*See* FAC ¶¶ 26–30.  Defendants do not dispute in the briefing on the instant motions that
Plaintiff's section 226(a) claim relates back to the filing of the original complaint, and both parties
assume that the timeliness of Plaintiff's claims should be determined by the original complaint,
filed on August 21, 2014.

Case No. 14-CV-03791-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

United States District Court
Northern District of California

1   finds that the theory is inapplicable.  As discussed above, the continuing violation theory permits

2   recovery for wrongful acts outside of the limitations period when "a wrongful course of conduct

3   [becomes] apparent only through the accumulation of a series of harms," but does not apply when

4   a plaintiff experiences "a series of discrete, independently actionable alleged wrongs." *Aryeh*, 55

5   Cal. 4th at 1198.  Here, Plaintiff is entitled to a statutory penalty for "the initial pay period in

6   which a violation [of section 226(a)] occurs" and "for each violation in a subsequent pay period."

7   Cal. Lab. Code. § 226(e)(1).  That Plaintiff may recover a statutory penalty for each violation of

8   section 226(a) indicates that Defendants' alleged failures to comply with section 226(a) were

9   discrete acts rather than a series of small, nonactionable harms.  In such a case, the continuing

10  violation theory does not apply, and Plaintiff may not recover for wrongful acts occurring outside

11  of the limitations period.  *See Aryeh*, 55 Cal. 4th at 1198.  Plaintiff offers no authority to the

12  contrary, and the Court is unaware of a case in which the continuing violation theory was applied

13  to render timely claims under section 226(a) outside the limitations period.

14  　　　　As to Plaintiff's claim under section 226(c) for failure to permit inspection of records,

15  Plaintiff's claim is entirely barred.  In Plaintiff's motion for summary judgment, Plaintiff asserts

16  that Plaintiff requested to inspect her time records in 2011 and on February 19, 2013, February 26,

17  2013, March 6, 2013, and March 21, 2013.  Pl. MSJ at 11.[6]  Plaintiff was not permitted to inspect

18  the requested records until April 10, 2013.  All of these requests and Defendants' response

19  occurred before the one year limitations period.  Consequently, Plaintiff's section 226(c) claim is

20  time barred.  The Court notes that Plaintiff does not assert that Defendants violated section 226(c)

21  with respect to the records provided on October 26, 2015, including when or how Plaintiff

22  requested the records and whether the records were produced within 21 days as required by

23  section 226(c).

24

25  [6] Defendants highlight another instance in which Plaintiff asked to inspect her time records, on
    March 15, 2013.  ECF No. 218-18, Decl. of Kimberly Schnader Ex. Q.  However, Plaintiff does
26  not raise this inspection request in any of Plaintiff's briefings, and it is not alleged in the FAC.
    Thus, the Court does not consider the March 15, 2013 request.  The Court notes, however, that this
27  claim would also be time barred.

35

28  Case No. 14-CV-03791-LHK
    ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY
    JUDGMENT AND GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

1      In sum, Plaintiff may recover for violations of section 226(a) only as to wage statements

2   provided on or after August 21, 2013, and Plaintiff may not recover for the alleged violations of

3   section 226(c).  Accordingly, Defendants' motion for partial summary judgment is GRANTED.

4      **2.   Merits**

5      In light of the foregoing, the Court considers the merits only of Plaintiff's section 226(a)

6   claim.  As stated above, section 226(a) requires employers to provide accurate itemized wage

7   statements.  Cal. Lab. Code § 226(a).  To comply with section 226(a), itemized wage statements

8   must include, among other things, gross wages earned, total hours worked, applicable effective

9   hourly rates, and the corresponding number of hours worked at each hourly rate.  *Id.*  To recover

10  for violations of section 226(a), an employee "must suffer injury as a result of a knowing and

11  intentional failure by an employer to comply with the statute."  *Price v. Starbucks Corp.*, 192 Cal.

12  App. 4th 1136, 1142 (2011).  In the instant case, Plaintiff asserts that the wage statements

13  provided by Defendants are inaccurate and violate section 226(a) because the wage statements

14  "did not reflect all of the overtime and hours she worked."  Pl. MSJ at 11; Pl. Reply at 5 ("Any

15  claims and damages in the case continue until trial."); *see also* FAC ¶¶ 27–28.

16      The parties do not dispute that this claim is derivative of Plaintiff's claims for unpaid

17  overtime.  Pl. MSJ at 11; Defs. Opp. at 9–10.  As discussed above, the Court found that disputed

18  issues of material fact exist as to whether Plaintiff worked any overtime for which she was not

19  compensated.  It necessarily follows that disputed issues of material fact exist as to whether

20  Plaintiff's wage statements were inaccurate for failing to include additional overtime.  *See Elliot*,

21  368 F. App'x at 764 (finding wage statements that did not include orientation time were not

22  inaccurate because the California Labor Code did not require compensation for orientation time);

23  *Novoa v. Charter Commc'ns, LLC*, 100 F. Supp. 3d 1013, 1027 (E.D. Cal. 2015) ("If Plaintiff is

24  correct that the pre-jobsite and post-jobsite activities are considered hours worked, it would follow

25  that Defendant's failure to report them on the wage statement would be in violation . . . .").  As

26  such, the Court DENIES Plaintiff's motion for summary judgment on Plaintiff's section 226(a)

27

28  Case No. 14-CV-03791-LHK
    ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY
    JUDGMENT AND GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

United States District Court
Northern District of California

1    claim.

2        **D.  Retaliation under California Labor Code § 1102.5(b) and Common Law**

3            Plaintiff's fifth cause of action contends that Defendants, in violation of California Labor

4    Code § 1102.5 and the common law, retaliated against Plaintiff after Plaintiff reported

5    Defendants' labor violations to the California Department of Industrial Relations, Congressman

6    Mike Honda of the U.S. House of Representatives, and the Monterey District Attorney.

7    Defendants move for summary judgment on the grounds that Plaintiff's section 1102.5 claim is

8    time barred and that Plaintiff fails to show an adverse employment action under either section

9    1102.5 or the common law.  Plaintiff cross moves for summary judgment as to Plaintiff's section

10   1102.5 retaliation claim without mentioning Plaintiff's common law claim.  Pl. MSJ at 11–13.

11   The Court first considers section 1102.5 and then addresses common law retaliation.

12           **a.  California Labor Code § 1102.5 Claim**

13           California Labor Code § 1102.5 protects "whistleblower" employees from retaliation.

14   *Patten v. Grant Joint Union High Sch. Dist.*, 134 Cal. App. 4th 1378, 1384–85 (2005).

15   Accordingly, section 1102.5 provides that:

16           An employer, or any person acting on behalf of the employer, shall not retaliate
             against an employee for disclosing information . . . to a government or law
17           enforcement agency . . . if the employee has reasonable cause to believe that the
             information discloses a violation of state or federal statute, or a violation of or
18           noncompliance with a local, state, or federal rule or regulation, regardless of
             whether disclosing the information is part of the employee's job duties.

19   Cal. Lab. Code § 1102.5(b).  Retaliation claims under section 1102.5 are evaluated under the three

20   step burden shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  First,

21   the plaintiff must show a prima facie case of retaliation: "(1) he or she engaged in a 'protected

22   activity,' (2) the employer subjected the employee to an adverse employment action, and (3) a

23   causal link existed between the protected activity and the employer's action."  *Loggins v. Kaiser*

24   *Permanente Int'l*, 151 Cal. App. 4th 1102, 1108–09 (2007).  Second, if the plaintiff successfully

25   establishes a prima facie case, "the burden shifts to the employer to provide evidence that there

26   was a legitimate, nonretaliatory reason for the adverse employment action."  *Id.*  Third, if the

27

28   Case No. 14-CV-03791-LHK

United States District Court
Northern District of California

37

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

1  employer produces evidence of a legitimate reason for the employment action, "the burden shifts

2  back to the employee to provide substantial responsive evidence that the employer's proffered

3  reasons were untrue or pretextual." *Id.* (internal quotation marks omitted).

4        Defendants contend that summary judgment is warranted because Plaintiff fails to establish

5  a prima facie case—specifically, an adverse employment action. To be actionable, an adverse

6  employment action must "materially affect the terms and conditions of employment." *Yanowitz v.*

7  *L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1052 (2005); *Patten*, 134 Cal. App. 4th at 1387 (adopting

8  *Yanowitz*'s "adverse employment action" standard for purposes of section 1102.5). The

9  "materiality" test "encompasses not only ultimate employment decisions, 'but also the entire

10  spectrum of employment actions that are reasonably likely to adversely and materially affect an

11  employee's job performance or opportunity for advancement in his or her career.'" *Patten*, 134

12  Cal. App. 4th at 1387 (quoting *Yanowitz*, 36 Cal. 4th at 1054). While "[m]inor or relatively trivial

13  adverse actions by employers or fellow employees that, from an objective perspective, are

14  reasonably likely to do no more than anger or upset an employee do not" constitute adverse

15  employment actions, the definition of adverse employment action "must be interpreted liberally

16  and with a reasonable appreciation of the realities of the workplace." *Yanowitz*, 36 Cal. 4th at

17  1054. Because "there is no requirement that an employer's retaliatory acts constitute one swift

18  blow, rather than a series of subtle, yet damaging, injuries," a plaintiff's allegations may be

19  considered collectively. *Id.* at 1055–56.

20       In the FAC, Plaintiff alleges two adverse employment actions: first, in October 2012,

21  Defendants "alter[ed] a very favorable performance review given on August 24, 2012[,] which

22  rated [Plaintiff] as 'Exceeding Expectations[,]' to a less favorable performance review rating her

23  as merely 'Meets Expectations.'" Pl. MSJ at 12; FAC ¶ 33. Second, in February 2013,

24  Defendants offered Plaintiff a temporary position in Monterey as a video interpreter, which

25  Plaintiff viewed as a demotion. FAC ¶ 34. In Plaintiff's motion for summary judgment, Plaintiff

26  alleges four additional adverse employment actions: (1) on June 26, 2013, when accepting service

27

28  Case No. 14-CV-03791-LHK
   ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY
   JUDGMENT AND GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

38

1    on behalf of Defendants of the Second Amended Complaint in Plaintiff's Santa Clara County

2    Superior Court action, Defendants' Vice President of Human Resources, Perry, allegedly told the

3    process server that Plaintiff is a "cuckoo"; (2) Defendants changed Plaintiff's department code on

4    June 12, 2014; (3) Defendants planned to terminate Plaintiff sometime after Plaintiff filed the

5    instant case on August 21, 2014; and (4) Defendants required Plaintiff to sign an at will

6    employment agreement on April 21, 2015.[7]

7        None of the actions identified by Plaintiff constitute adverse employment actions.  First,

8    "[a] statutory claim for retaliation may be predicated on an unfavorable evaluation only where the

9    employer wrongfully uses the negative evaluation to substantially and materially change the terms

10   and conditions of employment."  *Pinero v. Specialty Restaurants Corp.*, 130 Cal. App. 4th 635,

11   646 (2005) (internal quotation marks omitted); *see also Elizondo v. Tuffli*, 2015 WL 4528683, at

12   *9 (Cal. Ct. App. July 27, 2015) ("Negative performance evaluations . . . have been deemed

13   insufficiently 'adverse' as a matter of law.").  Here, Defendants offer evidence that the "meets

14   expectations" performance rating listed in Plaintiff's October 22, 2012 bonus letter was a mistake

15   that was corrected once Plaintiff brought it to Defendants' attention.  *See* Bloomer Depo. at 42–43.

16   Defendants point to a corrected letter sent to Plaintiff on October 30, 2012, which lists Plaintiff's

17   performance rating as "exceeds most expectations," a rating equivalent to Plaintiff's August 24,

18   2012 performance evaluation.  *See id.*  Plaintiff does not dispute this evidence or that the mistake

19   in Plaintiff's October 22, 2012 bonus letter had no impact on the amount of Plaintiff's bonus.  Nor

20   does Plaintiff offer evidence that the mistake materially impacted any other aspect of Plaintiff's

21   employment.  *Compare Canupp v. Children's Receiving Home of Sacramento*, 2016 WL 1587195,

22   at *16 (E.D. Cal. Apr. 20, 2015) (finding negative performance review was not an adverse

23

---

24   [7] Plaintiff did not allege these four retaliatory acts in the FAC and does not include these four acts
     in Plaintiff's damages calculations.  *See* FAC; Van Opp. Decl. Ex. 188 at 007280.  However,
25   Defendants address each of these four acts in their briefing on the instant motions and do not argue
     that these acts were not properly raised.  Accordingly, although "summary judgment is not a
26   procedural second chance to flesh out inadequate pleadings," *Wasco Prods., Inc. v. Southwall
     Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006), the Court considers the four retaliatory acts that
27   Plaintiff raises for the first time in Plaintiff's motion for summary judgment.

39

28   Case No. 14-CV-03791-LHK
     ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY
     JUDGMENT AND GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

1  employment action when review did not impact plaintiff's pay increase and did not contribute to

2  termination), *with Ferretti v. Pfizer Inc.*, 2013 WL 140088, at *12 (N.D. Cal. Jan. 10, 2013)

3  (finding undeserved, negative performance review was an adverse employment action when

4  review led to placement on a performance improvement plan and contributed to plaintiff's

5  termination).  Accordingly, the October 22, 2012 bonus letter's erroneous performance rating,

6  which was corrected on October 30, 2012 and had no impact on Plaintiff's bonus or any aspect of

7  Plaintiff's employment, was not an adverse employment action.

8            Second, the parties dispute whether the video interpreter position was a promotion or

9  demotion.  However, the parties do not dispute that Defendants did not force Plaintiff to take the

10  position and that Plaintiff in fact never took the position.  Instead, Defendants' offer of the video

11  interpreter position has not changed Plaintiff's work as an over-the-phone interpreter, her hours, or

12  her rate of pay.  Thus, even if the video interpreter position were a demotion as Plaintiff claims,

13  Plaintiff was not demoted.  Further, Plaintiff offers no evidence that she was threatened with other

14  adverse employment actions if she declined the video interpreter job.  "By [Plaintiff's] admission,

15  [her] job responsibilities and title did not change, [she] was not demoted, and [her] salary, bonus

16  structure, benefits and all other forms of compensation suffered no impact as a result of"

17  Plaintiff's refusal to accept the video interpreter position.  *Pinero*, 130 Cal. App. 4th at 646.

18  Accordingly, Plaintiff did not suffer an adverse employment action.  *See id.*

19            Third, Plaintiff claims that Perry, Defendant's Vice President of Human Resources, told a

20  process server that Plaintiff is a "cuckoo" when Perry accepted service of Plaintiff's Second

21  Amended Complaint in Plaintiff's Santa Clara County Superior Court case.  Defendants dispute

22  Plaintiff's claim.  However, Plaintiff alleges no adverse change in Plaintiff's employment based

23  on the alleged insult, nor points to any evidence that the alleged insult altered material terms and

24  conditions of Plaintiff's employment.  In addition, the California Supreme Court has held that

25  "[m]inor or relatively trivial adverse actions by employers or fellow employees that, from an

26  objective perspective, are reasonably likely to do no more than anger or upset an employee do not

27

28  Case No. 14-CV-03791-LHK

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

1    materially affect the terms or conditions of employment." *Yanowitz*, 36 Cal. 4th at 1054; *see also*

2    *Patten*, 134 Cal. App. 4th at 1387.  Specifically, "[a] mere offensive utterance . . . cannot properly

3    be viewed as materially affecting the terms, conditions, or privileges of employment." *Yanowitz*,

4    36 Cal. 4th at 1054 (noting that pattern of harassment and retaliation may be adverse employment

5    action).  Here, Plaintiff alleges a single inappropriate comment that Perry made outside of

6    Plaintiff's presence.  In the absence of any allegation that this alleged insult resulted in a change to

7    Plaintiff's employment, Plaintiff has failed to show that Perry's alleged "offensive utterance" is an

8    adverse employment action.  *See id.*

9          Fourth, Plaintiff states that Plaintiff "was not told that her employment code was changed.

10   Plaintiff was never told why her employment code was changed or what the code means."  Pl.

11   Reply at 6.  While Plaintiff argues the change in code must have some impact or else "the code

12   would not [have] been changed," *id.*, Plaintiff bears the burden of demonstrating a prima facie

13   case of retaliation, *Loggins*, 151 Cal. App. 4th at 1109.  Accordingly, Plaintiff must come forward

14   with some evidence that the department code change was adverse.  *See Crown v. Wal-Mart Stores,*

15   *Inc.*, 8 F. App'x 776, 779 (9th Cir. 2001) ("[Plaintiff's] mere speculation was insufficient to make

16   a prima facie showing of adverse employment action."); *Celotex Corp.*, 477 U.S. at 322–23

17   (holding that a party opposing summary judgment must come forward with evidence showing

18   triable issues of material fact on every essential element of her claim).  However, Plaintiff held the

19   same job title, the same schedule, and the same hourly rate of pay both before and after the

20   department code change.  Plaintiff points to no other possible adverse impacts of the department

21   code change.  Given that Plaintiff admittedly does not know the purpose of the department code

22   nor the impact of the change, Plaintiff fails to carry her burden to show that the change materially

23   affected the terms and conditions of her employment.  Consequently, the department code change

24   was not an adverse employment action.

25         Fifth, Plaintiff claims that Defendants planned to terminate Plaintiff's employment in

26   retaliation for filing this lawsuit.  Plaintiff identifies only one piece of evidence relevant to this

27                                                        41

United States District Court
Northern District of California

1   alleged plan: Perry's deposition, in which Perry states that Plaintiff's termination was discussed

2   during mediation as part of a potential settlement with Plaintiff.[8]   Van Decl. Ex. 40 at 13 (noting

3   that Plaintiff's termination was discussed "in trying to settle when we did arbitration or mediation,

4   that was in the – that was in the agreement").   Perry also states that, after the mediation, Perry did

5   not have any discussions about terminating Plaintiff's employment.  *Id.*  It is undisputed that

6   Plaintiff was not terminated.  The Ninth Circuit, interpreting California law, stated in a similar

7   situation that "[plaintiff] bases his claim on the fact that his superior threatened to fire him if he

8   did not comply with the UPS grooming policy within one week.  The threat was never carried out,

9   and [plaintiff] has not been demoted, fired, or otherwise disciplined.  In short, [plaintiff] did not

10  suffer an adverse employment action." *Lewis v. United Parcel Serv., Inc.*, 252 F. App'x 806, 807–

11  08 (9th Cir. 2007).  Here, Plaintiff was not terminated and identifies no other materially adverse

12  changes in her employment.  Thus, Perry's discussion of Plaintiff's possible termination during

13  mediation was not an adverse employment action.

14          Sixth, signing the at will agreement on April 21, 2015 did not change Plaintiff's

15  employment status.  Under California law, employment is presumed to be at will unless there is

16  evidence that the employment is for a specified term or the employee can be terminated only for

17  good cause.  *Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 335–36 (2000).  "An employment

18  agreement having no specified term is terminable at will by either party." *Singh v. Southland*

19  *Stone, U.S.A., Inc.*, 186 Cal. App. 4th 338, 355 (2010) (citing Cal. Lab. Code. § 2992).  The offer

20  letter that Plaintiff received from AT&T Language Line in 1997 does not list a term of

21  employment, Van Decl. Ex. 2, and Plaintiff identifies no other document providing a term of

22  employment.  Indeed, Plaintiff asserts that the 1997 letter still governs Plaintiff's current

23

24  [8] In a footnote, Defendants claim that Perry's discussion of Plaintiff's termination occurred in the
     context of mediation and is therefore privileged.  Defs. Opp. at 11 n.4 (citing Fed. R. Evid. 408
25  (providing that statements made during "compromise negotiations" are not admissible)).  Because
     the Court agrees with Defendants that the alleged discussion of Plaintiff's termination does not
26  demonstrate an adverse employment action, *see id.* (arguing that the termination discussion did not
     result in any change in the terms, conditions, or privileges of Plaintiff's employment), the Court
27  need not address Defendants' arguments regarding privilege.

                                                          42
28  Case No. 14-CV-03791-LHK
     ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY
     JUDGMENT AND GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

1    employment with Defendants.  Thus, Plaintiff is presumed to be an at will employee.  *Id.*

2         Plaintiff counters that she was not an at will employee before signing the April 21, 2015

3    agreement because Plaintiff received an implied contract in an email from Bloomer on May 29,

4    2012.  Pl. Opp. at 15.  Bloomer's May 2012 email stated, "Please rest assured your decision to no

5    longer be a part of the testing process will in no way reflect on your standing with the Company."

6    Van Decl. Ex. 16 at 004901–02.  It is apparent from examining this email that Bloomer did not

7    make an "actual promise that [Plaintiff] would be employed for a specific term or as long as [s]he

8    was doing a good job, or that [s]he could only be terminated for good cause" and thus no implied

9    contract was formed.  *Eisenberg v. Alameda Newspapers, Inc.*, 74 Cal. App. 4th 1359, 1389

10   (1999).

11        Additionally, in 2013—two years before Plaintiff signed the April 21, 2015 agreement—

12   Plaintiff signed a Code of Conduct that specifically confirmed that Plaintiff's employment was at

13   will.  ECF No. 225 ("Kelly Reply Decl."), Ex. DD ("I acknowledge that my employment with the

14   Company is at-will and that either the Company or I can terminate the relationship at any time and

15   for any or no reason.").  In light of Defendants' evidence that Plaintiff's employment was and has

16   always been at will, Plaintiff can not defeat summary judgment by asserting, with no evidentiary

17   support, that Plaintiff's employment was not at will until Plaintiff signed the April 21, 2015

18   agreement.  *See Soremekun*, 509 F.3d at 984 ("Conclusory, speculative testimony in affidavits and

19   moving papers is insufficient to raise genuine issues of fact and defeat summary judgment.").

20        Relatedly, Plaintiff asserts that her employment was threatened if she did not sign the at

21   will agreement.  Pl. MSJ at 12.  In support, Plaintiff cites Defendants' December 16, 2014 email in

22   which Defendants stated: "Per customer requirement, our staff, including interpreters . . . need to

23   complete the FWA/HIPAA compliance training annually.  Our records indicate that you have not

24   completed this training this year." and "[P]lease understand this is a compliance requirement, and

25   your ability to continue to work this coming year will be impacted if this training is not completed

26   on time."  Van Decl. Ex. 35.  The December 16, 2014 email does not mention the April 21, 2015

27

28   Case No. 14-CV-03791-LHK
     ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY
     JUDGMENT AND GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

United States District Court
Northern District of California

United States District Court
Northern District of California

1    agreement, which Plaintiff signed four months later.  Plaintiff provides no evidence linking the

2    December 16, 2014 email with the April 21, 2015 agreement, or linking the FWA/HIPAA

3    compliance training with the April 21, 2015 agreement.  Regardless, because the evidence shows

4    that Plaintiff's employment was at will before Plaintiff was asked to sign the April 21, 2015

5    agreement, Plaintiff points to no adverse change in her employment circumstances resulting from

6    the April 21, 2015 agreement.

7        Even considering collectively the six actions identified by Plaintiff, Plaintiff has not shown

8    any adverse employment action.  "By [Plaintiff's] admission, [her] job responsibilities and title did

9    not change, [she] was not demoted, and [her] salary, bonus structure, benefits and all other forms

10   of compensation suffered no impact" in the years following Plaintiff's reporting of Defendants'

11   alleged labor violations.  *Pinero*, 130 Cal. App. 4th at 646.  Plaintiff continues to work in the same

12   job, on the same schedule, at the same rate of pay as in 2010.  Because Plaintiff fails to raise a

13   triable issue as to an adverse employment action, Plaintiff fails to show a prima facie case of

14   retaliation.  *Loggins*, 151 Cal. App. 4th at 1109.  In light of the foregoing, the Court GRANTS

15   summary judgment to Defendants on Plaintiff's claim for retaliation under California Labor Code

16   § 1102.5.  Because the Court concludes that summary judgment is warranted on the basis that no

17   adverse employment action was taken, the Court need not address whether Plaintiff's section

18   1102.5 claim is timely.

19        **b.  Common Law Retaliation**

20        Although the FAC asserts retaliation under California Labor Code § 1102.5 and California

21   common law, Plaintiff has apparently abandoned her claim for common law retaliation.  Plaintiff

22   does not move for summary judgment on common law retaliation and makes no argument in

23   support of a common law retaliation claim in opposition to Defendants' motion for summary

24   judgment.  *See* Pl. MSJ at 11–13; Pl. Opp. at 10–12; Pl. Reply at 6–7.  Additionally, Plaintiff's

25   damages calculations seek only penalties under section 1102.5, not damages for common law

26   retaliation.  *See* Van Opp. Decl. Ex. 188.  Although "summary judgment is not properly granted

27

28   Case No. 14-CV-03791-LHK
     ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY
     JUDGMENT AND GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

1   simply because there is no opposition," *Atilano v. Cty. of Butte*, 2008 WL 4078809, at *6 (E.D.

2   Cal. Aug. 29, 2008) (citing *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993)), a court

3   "has no obligation to search the entire case file for evidence that establishes a genuine issue of fact

4   when the nonmovant presents inadequate opposition to a motion for summary judgment," *Fair*

5   *Hous. Council*, 249 F.3d at 1136–37.  Similar to retaliation under section 1102.5, to prove

6   common law retaliation Plaintiff must show (1) protected activity, (2) an adverse employment

7   action, and (3) a causal connection between the two.  *Colarossi v. Coty US Inc.* 97 Cal. App. 4th

8   1142, 1152 (2002).  As discussed above, Plaintiff fails to show any adverse employment action

9   because the six identified actions did not materially and adverse impact Plaintiff's employment.

10          Because Plaintiff abandons her claim for common law retaliation and there is no genuine

11   dispute of material fact that no adverse employment action occurred, the Court GRANTS

12   summary judgment to Defendants on Plaintiff's common law retaliation claim.  *See Campbell v.*

13   *Feld Entm't, Inc.*, 75 F. Supp. 3d 1193, 1204 (N.D. Cal. 2014) (granting summary judgment when

14   plaintiff abandoned cause of action).

15          **E.   Intentional Infliction of Emotional Distress**

16          Plaintiff's sixth cause of action for IIED asserts that Plaintiff suffered emotional distress

17   because of Defendants' failure to pay overtime, provide breaks and meal periods, and provide

18   accurate itemized wage statements, as well as because of Defendants' retaliation and Defendants'

19   forgery of Plaintiff's earnings statements.  Pl. MSJ at 13–15.  In addition, Plaintiff contends that

20   Defendants were bound to honor the 1997 contract between Plaintiff and AT&T Language Line

21   but callously failed to meet Defendants' obligations to (1) give annual raises; (2) compensate

22   Plaintiff for unused vacation days; (3) pay for seven floating holidays and seven working holidays

23   per year; (4) provide a 10% night differential; (5) assign Plaintiff 40 hours in a workweek from

24   2003 to 2006; and (6) honor four paid excused days per year.  *Id.* at 15–24.

25          Defendants move for summary judgment on two grounds: (1) Plaintiff's IIED claim is

26   barred by workers' compensation exclusivity; and (2) Defendants' conduct was not "extreme and

28   Case No. 14-CV-03791-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

1   outrageous." Defs. MSJ at 14–16. In the alternative, Defendants move for partial summary

2   judgment that Plaintiff's claim is limited to two years. Plaintiff cross moves for summary

3   judgment on the basis that Defendants intentionally caused Plaintiff emotional distress. Because

4   the Court concludes that Plaintiff's claim is preempted by the workers' compensation law, the

5   Court need not consider Defendants' remaining arguments or the merits of Plaintiff's IIED claim.

6       As stated, Defendants assert that Plaintiff's IIED claim is barred by workers' compensation

7   exclusivity. In other words, Defendants contend that any remedy for Plaintiff's emotional distress

8   lies in pursuing a workers' compensation claim. Under California law, injuries sustained by

9   employees "arising out of and in the course of the employment" are governed by the workers'

10  compensation law. Cal. Lab. Code § 3600(a). Subject to certain exceptions not relevant here,

11  claims based on such injuries are preempted by the exclusivity provisions of the workers'

12  compensation law and are not compensable in a civil action. *Id.* § 3602(a).

13      The California Supreme Court has held that claims of IIED arising out of the course of

14  employment are generally preempted by the workers' compensation law. *Livitsanos v. Supreior*

15  *Court*, 2 Cal. 4th 744, 754–55 (1992). Such IIED claims are preempted even where the emotional

16  distress did not result in any physical injury or compensable disability. *Id.* at 755. However, IIED

17  claims are not preempted if the employer's alleged misconduct (1) "contravenes fundamental

18  public policy," or (2) "exceeds the risk inherent in the employment relationship." *Id.* at 754.

19      In 2008, the California Supreme Court addressed the scope of these two exceptions to

20  exclusivity in *Miklosy v. Regents of the University of California*, 44 Cal. 4th 876 (2008). There,

21  the plaintiffs claimed that they had been wrongfully terminated in retaliation for lodging safety

22  complaints about a project they worked on at the Lawrence Livermore National Laboratory. *Id.* at

23  884. The plaintiffs claimed IIED based on their employer's and supervisors' "outrageous

24  conduct" at the worksite. *Id.* at 902. The California Supreme Court declined to apply the

25  "fundamental public policy" exception to the plaintiffs' claims arising from whistleblower

26  retaliation because "[t]he exception for conduct that 'contravenes fundamental public policy' is

27

28  Case No. 14-CV-03791-LHK
    ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY
    JUDGMENT AND GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

United States District Court
Northern District of California

46

aimed at permitting a *Tameny*[9] action to proceed despite the workers' compensation exclusive remedy rule." *Id.* at 902–03 (footnote added).  The California Supreme Court further concluded that whistleblower retaliation did not fall within the second exception because retaliation did not "exceed[] the risks inherent in the employment relationship." *Id.* at 903.  Thus, the California Supreme Court stated that where the alleged conduct "occurred at the worksite, in the normal course of the employee-employer relationship . . . workers' compensation is plaintiffs' exclusive remedy for any injury that may have resulted." *Id.* at 902.

In the instant case, Plaintiff's alleged emotional distress arises out of Plaintiff's employment and thus falls within the workers' compensation law.  Plaintiff asserts that workers' compensation exclusivity does not apply because "the continuing damages were caused by Defendants' conduct and with Defendants' fault." Pl. Opp. at 13.  Plaintiff also reiterates that Defendants acted in callous disregard for Plaintiff and repeatedly committed wage and hour violations and breaches of the employment contract. *Id.*  Construing Plaintiff's argument favorably because she is pro se, Plaintiff could mean that Defendants violated fundamental public policies or that Defendants acted outside the normal course of the employment relationship.  Accordingly, the Court addresses the two exceptions to exclusivity.

As to the first exception, the California Supreme Court instructed in *Miklosy* that "[t]he exception for conduct that 'contravenes fundamental public policy' is aimed at permitting a *Tameny* action to proceed despite the workers' compensation exclusive remedy rule." *Miklosy*, 44 Cal. 4th at 902–03.  Following *Miklosy*, courts in California have found that IIED claims are preempted by workers' compensation exclusivity "even if they are based on conduct that allegedly violates a fundamental public policy, because the . . . public policy exception operates only to permit *Tameny* actions for wrongful termination in violation of public policy, not IIED claims." *Langevin v. Fed. Express Corp.*, 2015 WL 1006367, at *10 (C.D. Cal. Mar. 6, 2015) (collecting

---

[9] *Tameny* actions are common law actions against an employer for wrongful termination in violation of public policy.  *Miklosy*, 44 Cal. 4th at 899; *see also Tameny v. Atl. Richfield Co.*, 27 Cal. 3d 167 (1980).

47

Case No. 14-CV-03791-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

United States District Court
Northern District of California

1   cases); *see also Yau v. Santa Margarita Ford, Inc.*, 229 Cal. App. 4th 144, 161–62 (2014)

2   (distinguishing cases that found IIED claims were not barred because the cases were decided

3   before *Miklosy*).   Particularly relevant here is *Vasquez v. Franklin Management Real Estate Fund,*

4   *Inc.*, 222 Cal. App. 4th 819 (2013).   In *Vasquez*, the California Court of Appeal found that the

5   plaintiff stated a claim for discharge in violation of public policy when the plaintiff's employer

6   effectively paid the plaintiff less than the minimum wage.   *Id.* at 828–29.   The California Court of

7   Appeal found that timely payment of minimum and overtime wages is a fundamental public

8   policy.   *Id.* at 831–32.   However, the California Court of Appeal concluded that Plaintiff's IIED

9   claim did not fall within the public policy exception to exclusivity because the public policy

10   exception was limited to *Tameny* actions for wrongful discharge.   *Id.* at 832–33.   Similarly, in the

11   instant case, Plaintiff asserts that timely payment of overtime, provision of meal and rest breaks,

12   provision of accurate wage statements, and enforcement of contracts are fundamental public

13   policies.   However, as stated in *Vasquez*, only *Tameny* actions fall within the public policy

14   exception to exclusivity.   *Id.*   In other words, IIED claims that are not *Tameny* actions fall within

15   workers' compensation exclusivity, even when the IIED claims are based on fundamental public

16   policies.   Thus, the public policy exception to exclusivity does not apply to Plaintiff's IIED claim.

17           As to the second exception, to determine whether conduct is outside the normal

18   employment relationship, the court considers whether "the alleged acts, bereft of their motivation,

19   can ever be viewed as a normal aspect of the employer relationship."   *Charles J. Vacanti, M.D.,*

20   *Inc. v. State Comp. Ins. Fund*, 24 Cal. 4th 800, 822 (2001).   An employer's conduct does not

21   "exceed the risk inherent in the employment relationship" when it consists of "actions which are a

22   normal part of the employment relationship, such as demotions, promotions, criticism of work

23   practices, and frictions in negotiations as to grievances."   *Cole v. Fair Oaks Fire Protection Dist.*,

24   43 Cal. 3d 148, 160 (1987).   Thus, termination of an employee in retaliation for an employee's

25   whistleblowing conduct has been found to be within the compensation bargain.   *Miklosy*, 44 Cal.

26   4th at 902.   By contrast, "conduct in which an employer steps out of its 'proper role' as an

27

28   Case No. 14-CV-03791-LHK
     ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY
     JUDGMENT AND GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

United States District Court
Northern District of California

1    employer or conduct of 'questionable relationship to the employment' . . . is not encompassed

2    within the compensation bargain and is not subject to the exclusivity rule." *Singh*, 186 Cal. App.

3    4th at 367.  For example, California courts have found that false imprisonment and sexual

4    harassment are not within the compensation bargain and thus not subject to exclusivity.  *See*

5    *Fermino v. Fedco, Inc.* 7 Cal. 4th 701, 723 (1994) (false imprisonment of employee during theft

6    investigation not within scope of the exclusivity rule because "such action cannot be said to be a

7    normal aspect of the employment relationship"); *Hart v. Nat'l Mortg. & Land Co.* 189 Cal. App.

8    3d 1420, 1431 (1987) (exclusivity doctrine not applicable to intentional infliction of emotional

9    distress claim based on sexual harassment).

10           Here, Plaintiff points to no action that has a "questionable relationship to the employment."

11   *See id.*  Instead, Defendants' allegedly outrageous conduct arises out of the normal employment

12   relationship, including paying employees for overtime and vacation, scheduling breaks and

13   holidays, and conducting performance reviews.  *See Terry v. Morgan, Lewis & Bockius, LLP*,

14   2012 WL 662524, at *2 (Cal. Ct. App. Feb. 28, 2012) (IIED claim based on employer's failure to

15   pay a bonus is barred).  In addition, Perry's alleged name calling stems from "frictions in

16   negotiations as to grievances," *Cole*, 43 Cal. 3d at 160, and "conflicts arising from [Plaintiff's]

17   employment," *Singh*, 186 Cal. App. 4th at 367.  In *Singh*, for example, the plaintiff's employer

18   "berated and humiliated [the plaintiff], criticized [the plaintiff's] job performance, and insulted

19   [the plaintiff] with profanities on a regular basis," as well as "slammed [a] laptop computer shut

20   onto [the plaintiff's] hand, which held a sandwich." *Singh*, 186 Cal. App. 4th at 367.  The

21   California Court of Appeal held that although the employer's misconduct "was offensive and

22   clearly inappropriate," the misconduct "all occurred in the workplace and involved criticisms of

23   job performance or other conflicts arising from the employment." *Id.*; *see also Obacz v.*

24   *Northridge Hosp. Med. Ctr.*, 2015 WL 294828, at *5 (Cal. Ct. App. Jan. 22, 2015) (finding that

25   employee's IIED claim was barred by workers' compensation exclusivity when the claim was

26   based on employment-related conversations that the employee asserts "insulted her honor, caused

27

28   Case No. 14-CV-03791-LHK
     ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY
     JUDGMENT AND GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

United States District Court
Northern District of California

1   her to cry, and humiliated her"). Accordingly, the California Court of Appeal held that the

2   misconduct was within the compensation bargain and the plaintiff's IIED claim was barred by

3   workers' compensation exclusivity.

4        Here, the alleged offensive name calling is one comment made by Perry when Perry

5   accepted service of the Second Amended Complaint in Plaintiff's state court lawsuit from a

6   process server, apparently at Defendants' office. *See* Van Decl. Ex. 34. Although inappropriate,

7   Perry's alleged response to Plaintiff's employment related lawsuit occurred at Defendants' office

8   and involved "conflicts arising from the employment," and thus occurred within the course of the

9   employer-employee relationship. *See Singh*, 186 Cal. App. 4th at 367. Although "[t]his does not

10  by any means excuse the [alleged] misconduct, [it] compels the conclusion that . . . the workers'

11  compensation exclusivity rule applies to any emotional injury arising from the described

12  misconduct." *Id.*

13       Lastly, the Court notes Plaintiff's citation to the order of Judge Piece in Plaintiff's Santa

14  Clara County Superior Court action sustaining demurrers to Plaintiff's intentional and negligent

15  infliction of emotion distress claims. Pl. Opp. at 13. Plaintiff does not explain why Judge Pierce's

16  decision is relevant, and Judge Pierce's decision is no help to Plaintiff. First, Judge Pierce found

17  that Plaintiff's negligent infliction of emotional distress claim was barred by workers'

18  compensation exclusivity. *See* Van Opp. Decl. Ex. 159 at 3–4. Although Judge Pierce did not

19  address whether Plaintiff's IIED claim was similarly barred, the Court notes that other California

20  courts have not distinguished between intentional and negligent infliction of emotional distress

21  claims for purposes of workers' compensation exclusivity. *See Grotz v. Kaiser Found. Hosps.*,

22  2012 WL 5350254, at *11 n.6 (N.D. Cal. Oct. 29, 2012) (collecting cases).

23       Second, Judge Pierce sustained the demurrer as to Plaintiff's IIED claim because Plaintiff

24  failed to demonstrate extreme and outrageous conduct and thus could not recover as a matter of

25  law. *See* Van Opp. Decl. Ex. 159 at 3. Thus, if this Court followed Judge Pierce's reasoning, the

26  Court would still grant summary judgment to Defendants as to Plaintiff's IIED claim. Regardless,

27

28  Case No. 14-CV-03791-LHK
    ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY
    JUDGMENT AND GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

United States District Court
Northern District of California

1   neither party makes any argument that this Court is bound by Judge Pierce's order.

2        In sum, Plaintiff's asserted emotional distress arises out of Plaintiff's employment with

3   Defendants and her claim for IIED is barred by workers' compensation exclusivity.  Accordingly,

4   the Court DENIES Plaintiff's motion for summary judgment and GRANTS Defendants' motion

5   for summary judgment as to Plaintiff's IIED claim.

6        **F. Breach of Contract**

7        Plaintiff's seventh cause of action is for breach of contract based on the 1997 letter from

8   AT&T Language Line to Plaintiff.  Plaintiff asserts that Defendants were bound to honor the 1997

9   contract but failed to meet Defendants' obligations to (1) give annual raises; (2) compensate

10  Plaintiff for unused vacation days; (3) pay for seven floating holidays and seven working holidays

11  per year; (4) provide a 10% night differential; (5) assign Plaintiff 40 hours in a workweek from

12  2003 to 2006; and (6) honor four paid excused days per year.  Pl. MSJ at 15–24.

13       Defendants move for summary judgment on the grounds that Plaintiff's claim is barred by

14  the statute of limitations.  Defs. MSJ at 17.  For purposes of the statute of limitations, Defendants

15  do not dispute that the 1997 letter constitutes a contract between Plaintiff and Defendants.  Defs.

16  Reply at 9.  In the alternative, Defendants contend that Plaintiff's claim fails because the 1997

17  letter did not form a contract and that Plaintiff, as an at will employee, accepted any changes to the

18  terms of her employment.  *Id.* at 18.  Plaintiff cross moves for summary judgment and requests

19  compensatory damages, including increased contributions to Plaintiff's 401k, and interest.  *Id.* at

20  23–24.  Because the Court concludes that Plaintiff's claim is time barred, the Court need not

21  address the merits of Plaintiff's claim.

22       Under California law, claims for breach of a written contract are governed by a four year

23  statute of limitations.  Cal. Civ. Proc. Code § 337; *see also Donoghue v. Cty. of Orange*, 848 F.2d

24  926, 930 (9th Cir. 1987) (applying section 337's four year statute of limitations to an employment

25  contract).  Such claims accrue at the time of breach.  *See Menefee v. Ostawari*, 228 Cal. App. 3d

26  239, 246 (1991) ("[A] cause of action for breach of contract ordinarily accrues at the time of

27

28  Case No. 14-CV-03791-LHK
    ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY
    JUDGMENT AND GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

51

United States District Court
Northern District of California

breach regardless of whether any substantial damage is apparent or ascertainable."); *Matsumoto v. Republic Ins. Co.*, 792 F.2d 869, 871 (9th Cir. 1986) (per curiam) (under California law, a contract cause of action ordinarily accrues at the date of injury). Plaintiff filed the complaint on August 21, 2014.[10]  Thus, Defendants' breach of contract must have occurred after August 21, 2010 for Plaintiff's claim to be timely.

Here, Plaintiff asserts that Defendants first breached the contract in 1999 after Defendants purchased AT&T Language Line.  Specifically, Plaintiff contends that Defendants have failed to pay Plaintiff for vacation days, floating and working holidays, and excused days as well as a 10% night differential since 1999. *See, e.g.*, Van Opp. Decl. Ex. 188 (Plaintiff's amended damages calculations).  In addition, Plaintiff asserts that she last received a raise in 2002, in contravention of Defendants' obligation to provide annual raises. *See, e.g.*, Van Opp. Decl. Ex. 170; Van Depo. at 147.  Lastly, Plaintiff alleges that Defendants failed to provide Plaintiff with 40 hours of work per week from 2003 through 2006. *See id.*  To demonstrate breach and damages, Plaintiff relies on her year-end earnings statements, *see* Pl. MSJ at 17–18; Pl. Opp. at 18–19, and submits year-end earnings statements going back to 2003, Van Decl. Ex. 172.  Thus, according to Plaintiff, it was clear from Plaintiff's year-end earnings statements that Defendants had breached every relevant term of the 1997 letter by the end of 2003.  Accordingly, relying on Plaintiff's theory of breach, Plaintiff's breach of contract claim accrued by the end of 2003 at the latest. *See Menefee*, 228 Cal. App. 3d at 246.  Plaintiff did not file the instant complaint until 2014—seven years after the applicable four year limitations period.  Accordingly, Plaintiff's breach of contract claim is time barred.

In response, Plaintiff asserts that her breach of contract claim "is not time barred for the

---

[10] Plaintiff did not originally assert a breach of contract claim in the original complaint in the instant case.  ECF No. 1.  Plaintiff first asserted a breach of contract claim in the FAC, filed on April 22, 2015. *See* FAC.  Defendants do not dispute in the briefing on the instant motions that Plaintiff's breach of contract claim relates back to the filing of the original complaint, and both parties assume that the timeliness of Plaintiff's claims should be determined by the original complaint, filed on August 21, 2014.

Case No. 14-CV-03791-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

United States District Court
Northern District of California

simple reason that contracts are not subjected to the statute of limitation." Pl. Opp. at 15. This statement is plainly incorrect. As discussed above, claims based on written contracts are subject to a four year statute of limitations in California. Cal. Civ. Proc. Code § 337.

Plaintiff also argues that it is illegal for Defendants to forfeit any of Plaintiff's vacation time regardless of the statute of limitations. Pl. MSJ at 21–23. Plaintiff relies on California Labor Code § 227.3, which provides that "whenever a contract of employment or employer policy provides for paid vacations, and an employee is terminated without having taken off his vested vacation time, all vested vacation shall be paid to him as wages at his final rate." Plaintiff notes that the California Court of Appeal has held that under section 227.3, an employee is entitled to all vested vacation upon termination, even vacation accrued years before, without backwards-looking restrictions from a statute of limitations. *Church v. Jamison*, 143 Cal. App. 4th 1568, 1583 (2006).

However, Plaintiff ignores that the California Court of Appeal also stated that a "cause of action seeking payment for unused vested vacation" pursuant to section 227.3 accrues not when the vacation vests but upon the termination of the employment relationship. *Id.* at 1576–77 ("[T]ermination of employment is the event that converts the employer's obligation to allow an employee to take vacation from work into the monetary obligation to pay that employee for unused vested vacation time." (footnote omitted)). Thus, the California Court of Appeal concluded that "an employee has the right to be paid for unused vacation *only after the employee is terminated* without having taken off his vested vacation time." *Id.* at 1576 (emphasis added) (internal quotation marks omitted). Plaintiff has not been terminated and thus can not bring a claim pursuant to section 227.3.

Here, Plaintiff seeks compensation for unused vacation time not under section 227.3 but pursuant to a contract with Defendants. Neither section 227.3 nor *Church* purports to change the statute of limitations applicable to common law breach of contract claims. Unlike a claim for vested vacation that accrues upon termination, Plaintiff's breach of contract claim accrued upon

United States District Court
Northern District of California

1    Defendants' breach of the contract.  *See Church*, 143 Cal. App. 4th at 1583 ("[A] breach of

2    contract claim does not accrue until there has been a breach of the contract.").  As discussed

3    above, according to Plaintiff, Defendants had breached the contract by the end of 2003 at the

4    latest.  Thus, Plaintiff needed to file her claim by the end of 2007 for the claim to be timely.

5    Plaintiff did not file until 2014.

6           Plaintiff also cites *Boothby v. Atlas Mechanical, Inc.*, 6 Cal. App. 4th 1595 (1992), for the

7    proposition that equitable tolling renders Plaintiff's claim timely.  However, *Boothby* does not

8    discuss equitable tolling.  Rather, *Boothby* discusses the right of a terminated employee to recover

9    vested vacation pursuant to section 227.3.  *Id.* at 1599.  The Court acknowledges, as stated in

10   *Boothby*, that vacation time "constitutes deferred wages for services rendered" and "principles of

11   equity and justice[] compel the conclusion that a proportionate right to a paid vacation 'vests' as

12   the labor is rendered."  *Id.* at 1600 (emphasis omitted) (quoting *Suastez v. Plastic Dress-Up Co.*,

13   31 Cal. 3d 774, 784 (1982)).  *Boothby* continued, however: "[o]nce vested, the right is protected

14   from forfeiture by section 227.3."  *Id.* (emphasis omitted).  As stated above, a cause of action to

15   enforce section 227.3 accrues only upon termination, and Plaintiff has not been terminated.  *See*

16   *Church*, 143 Cal. App. 4th at 1576–77.  No case cited by Plaintiff suggests that Plaintiff may

17   avoid the statute of limitations on Plaintiff's alleged breach of contract claim by referencing

18   section 227.3

19          In addition, equitable tolling does not apply to Plaintiff's claim.  Under California law,

20   equitable tolling "reliev[es] plaintiff from the bar of a limitations statute when, possessing several

21   legal remedies he, reasonably and in good faith, pursues one designed to lessen the extent of his

22   injuries or damage."  *Cervantes v. City of San Diego*, 5 F.3d 1273, 1275 (9th Cir. 1993) (quoting

23   *Addison v. California*, 21 Cal. 3d 313, 317 (1978)).  Equitable tolling applies if the plaintiff's

24   actions satisfy three factors: "1) timely notice to the defendants in filing the first claim; 2) lack of

25   prejudice to the defendants in gathering evidence for the second claim; and 3) good faith and

26   reasonable conduct in filing the second claim."  *Id.*  However, equitable tolling "is certainly not

27

28   Case No. 14-CV-03791-LHK
     ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY
     JUDGMENT AND GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

United States District Court
Northern District of California

1    available to a plaintiff who engages in the procedural tactic of moving the case from one forum to

2    another in the hopes of obtaining more favorable rulings." *Mitchell v. Frank R. Howard Memorial*

3    *Hosp.*, 6 Cal. App. 4th 1396, 1407–08 (1992).

4         Here, Plaintiff's Santa Clara County Superior Court complaint did not allege a breach of

5    contract claim. *See* RJN Exs. A, C. It is thus not clear whether Defendants had "timely notice" of

6    the breach of contract claim such that equitable tolling would apply. *See Cervantes*, 5 F.3d at

7    1275–76 (noting that the equitable tolling applies when the claim in the first action is "so similar"

8    to the claim in the second action that "defendant's investigation of the first claim will put him in a

9    position to fairly defend the second"). The Court need not determine whether Defendants had

10   timely notice, however, as Plaintiff clearly can not meet equitable tolling's third factor, "good

11   faith and reasonable conduct in filing the second claim." This Court has already found that

12   Plaintiff engaged in conduct indicative of forum shopping and vexatious litigation when

13   "transferring" Plaintiff's state court case to federal court. ECF Nos. 41, 194. Thus, equitable

14   tolling is unwarranted.

15        Moreover, even if the Court applied equitable tolling to Plaintiff's claim, it would be

16   untimely. "[T]he effect of equitable tolling is that the limitations period stops running during the

17   tolling event, and begins to run again only when the tolling event has concluded." *Lantzy v.*

18   *Centex Homes*, 31 Cal. 4th 363, 371 (2003) (emphasis omitted). Plaintiff did not file an action in

19   Santa Clara County Superior Court until April 8, 2013, six years after the statute of limitations ran

20   on Plaintiff's breach of contract claim. Thus, even if the Court were to toll the statute of

21   limitations for the duration of the action that Plaintiff filed in Santa Clara County Superior Court,

22   Plaintiff's claim would be still be untimely.

23        In sum, Defendants allegedly breached all of the terms of the 1997 letter by the end of

24   2003. These breaches were clear from Plaintiff's year-end wage statements and rate of pay. Yet

25   Plaintiff did not file the instant complaint until 2014, eleven years after Defendants first breached

26   the contract. Because the statute of limitations for written contracts is only four years, Plaintiff's

28   Case No. 14-CV-03791-LHK
     ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY
     JUDGMENT AND GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

1   breach of contract claim is untimely, and Defendants' motion for summary judgment as to this

2   claim is GRANTED.

3   **G.  UCL**

4           Plaintiff's eighth cause of action arises under the UCL, which provides a cause of action

5   for business practices that are (1) unlawful, (2) unfair, or (3) fraudulent.  Cal. Bus & Prof. Code

6   § 17200, *et seq.*  Each prong of the UCL provides "a separate and distinct theory of liability."

7   *Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 731 (9th Cir. 2007).  Plaintiff asserts a

8   claim under the "unlawful" prong, which prohibits "anything that can properly be called a

9   business practice and that at the same time is forbidden by law."  *Cel-Tech Commc'ns, Inc. v. L.A.*

10  *Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999). "Generally, violation of almost any law may serve

11  as a basis for a UCL claim."  *Antman v. Uber Techs., Inc.*, 2015 WL 6123054, *6 (N.D. Cal. Oct.

12  19, 2015) (internal quotation marks omitted).

13          Defendants move for partial summary judgment on the grounds that the statute of

14  limitations restricts Plaintiff's claim to violations occurring in the four years prior to Plaintiff's

15  filing the instant suit.  Plaintiff cross moves for summary judgment because, according to Plaintiff,

16  Defendants' violations of the FLSA and California Labor Code as well as Defendants' breach of

17  contract constitute unlawful business practices in violation of the UCL.  Pl. MSJ at 24.  The Court

18  begins by considering the statute of limitations then turns to the merits.

19          **1.  Statute of Limitations**

20          The parties do not dispute that claims under the UCL "shall be commenced within four

21  years after the cause of action accrued."  Cal. Bus. & Prof. Code § 17208; *see also Cortez*, 23 Cal.

22  4th 163 at 178–79 ("*Any* action on *any* UCL cause of action is subject to the four year period of

23  limitations created by that section."); *Bao Yi Yang*, 471 F. App'x at 788 ("The statute of

24  limitations for claims under the California Unfair Competition Law . . . is four years.").  Plaintiff

25  filed the complaint on August 21, 2014.[11]  Under the UCL's four year statute of limitations,

26  _____

27  [11] Plaintiff did not originally assert a UCL claim in the original complaint in the instant case, filed

28  Case No. 14-CV-03791-LHK
    ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY
    JUDGMENT AND GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Plaintiff may only recover for violations of the UCL occurring after August 21, 2010.  In line with

2    this requirement, Plaintiff seeks recovery only "for a four year period" under the UCL.  Pl. Opp. at

3    25 (citing Van Decl. Ex. 188 (Plaintiff's damages calculations)).  Accordingly, Defendants'

4    motion for partial summary judgment is GRANTED.

5          As discussed above, claims for unpaid overtime and missed meal and rest breaks accrue on

6    each failure to pay compensation or provide the meal or rest break.  Thus, Plaintiff may pursue

7    UCL claims predicated upon unpaid overtime and missed meal and rest periods that occurred

8    within the four year limitations period.  *See Lazaro*, 2012 WL 566340, at *9, *11 (awarding four

9    years of overtime backpay as restitution under the UCL); *Lopez*, 2010 WL 728205, at *10

10   (holding that payments for missed meal and rest periods are recoverable under the UCL).

11         However, the statute of limitations precludes any recovery under the UCL based on

12   Plaintiff's breach of contract claim.  As discussed above, claims based on breach of a written

13   contract are governed by a four year statute of limitations.  Cal. Civ. Proc. Code § 337; *see also*

14   *Donoghue*, 848 F.2d at 930 (applying section 337's four year statute of limitations to an

15   employment contract).  The Court concluded that Plaintiff's breach of contract claim is untimely

16   under a four year statute of limitations because Plaintiff's breach of contract claim accrued by the

17   end of 2003, at the latest.  Accordingly, a UCL claim based on the same alleged breaches of

18   contract is similarly time barred under the UCL's four year statute of limitations.

19         **2.   Merits**

20         While Plaintiff can not pursue a UCL claim predicated upon breach of contract, Plaintiff

21   may still recover for overtime and meal and rest period violations occurring within the four year

22   limitations period.  *See Lazaro*, 2012 WL 566340, at *9, *11 (awarding four years of overtime

23   backpay as restitution under the UCL); *Lopez*, 2010 WL 728205, at *10 (holding that payments

24

25   August 21, 2014.  ECF No. 1.  Instead, Plaintiff first asserted a UCL claim in the FAC, filed April
     22, 2015.  *See* FAC.  Defendants do not dispute in the briefing on the instant motions that
26   Plaintiff's UCL claim relates back to the filing of the original complaint and both parties assume
     that the timeliness of Plaintiff's claims should be determined by the original complaint filed on
27   August 21, 2014.

28   Case No. 14-CV-03791-LHK
     ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY
     JUDGMENT AND GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

1    for missed meal and rest periods are recoverable under the UCL).  Accordingly, the Court

2    addresses the merits of Plaintiff's UCL claim predicated upon overtime and meal and rest period

3    violations.

4         Defendants do not dispute that Plaintiff's claims for unpaid overtime and missed breaks

5    and meal periods may serve as predicates for Plaintiff's UCL claim.  *See Cortez*, 23 Cal. 4th at

6    178 ("We recognize that any business act or practice that violates the Labor Code through failure

7    to pay wages is, by definition (§ 17200), an unfair business practice.").  However, Defendants

8    argue that disputes of material fact as to Plaintiff's predicate claims preclude summary judgment

9    as to Plaintiff's UCL claim.

10        The Court agrees that Plaintiff's UCL claim rises or falls with Plaintiff's predicate claims.

11   *See, e.g.*, *Punian v. Gillette Co.*, 2016 WL 1029607, at *17 (N.D. Cal. Mar. 15, 2016) (noting that

12   claims under the unlawful prong of the UCL rely on the violation of an underlying statute).

13   Accordingly, the Court finds that summary judgment must be denied as to violations of the UCL

14   predicated on Defendants' liability for unpaid overtime.  The Court found above that triable issues

15   of fact remain regarding whether Defendants violated the overtime requirements of the FLSA or

16   the California Labor Code.

17        Similarly, summary judgment must be denied as to violations of the UCL predicated on

18   Plaintiff's claim that Defendants forced Plaintiff to work through scheduled breaks and meal

19   periods in violation of section 226.7.  As discussed above, a dispute of material fact exists as to

20   whether Plaintiff was forced to work through scheduled breaks and meal periods.

21        However, summary judgment is warranted as to Defendants' liability for UCL violations

22   predicated on Plaintiff's claim that Defendants failed to schedule Plaintiff for two breaks and one

23   meal period per eight hour day.  As discussed above, Plaintiff has proven 71 instances of break

24   and meal period violations occurring between October 7, 2010 and August 21, 2011: 69 days on

25   which Plaintiff was scheduled for only one "Break" and one day (June 7, 2011) on which Plaintiff

26   was scheduled for only one "Break" and no "Lunch."  *See* Van Decl. Ex. 26.  Plaintiff has also

27

28   Case No. 14-CV-03791-LHK
     ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY
     JUDGMENT AND GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

proven 65 instances of rest break and meal period violations after August 21, 2011: 61 days on

which Plaintiff was denied one rest break or meal period and 2 days Plaintiff was denied both rest

breaks.  Because Plaintiff has shown that Defendants are liable under 226.7 for these violations,

Plaintiff has shown that Defendants are similarly liable under the UCL's unlawful prong.  *See Cel-*

*Tech*, 20 Cal. 4th at 180 (noting that the unlawful prong of the UCL permits injured consumers to

"borrow[]" violations of other laws and treat them as unfair competition that is independently

actionable).  Accordingly, summary judgment in favor of Plaintiff is warranted as to Defendants'

liability under the UCL for the 135 demonstrated violations of section 226.7.

Because the Court concludes that summary judgment is warranted as to liability, the Court

considers whether to grant summary judgment on damages.  "UCL remedies are cumulative to

remedies available under other laws . . . ."  *Cortez*, 23 Cal. 4th at 179 (citing Cal. Bus. & Prof.

Code § 17205).  Above, the Court found a triable issue as to damages under section 226.7 because

the parties disagree over the extent to which Defendants have already compensated Plaintiff for

missed breaks and meal periods and thus the amount of damages owed.  Accordingly, the Court

finds that a triable issue exists as to the amount of restitution owed to Plaintiff for Defendants'

violations of the UCL that are predicated upon violations of section 226.7.

In sum, the Court GRANTS partial summary judgment in favor of Plaintiff as to

Defendants' liability under the UCL for the 136 demonstrated violations of section 226.7, but

DENIES summary judgment as to damages, and as to all other alleged UCL violations.

## V.    CONCLUSION

For the foregoing reasons, the Court rules as follows:

- As to Plaintiff's first cause of action for unpaid overtime in violation of the FLSA, Plaintiff's motion for summary judgment is DENIED, and Defendants' motion for partial summary judgment is GRANTED.  Plaintiff is limited to violations occurring within the three year statute of limitations.

- As to Plaintiff's second cause of action for unpaid overtime in violation of California Labor Code §§ 510 and 1194, Plaintiff's motion for summary judgment is DENIED, and Defendants' motion for partial summary judgment is GRANTED.  Plaintiff is limited to violations occurring within the three year statute of limitations.

- As to Plaintiff's third cause of action for unpaid meal and rest periods in violation of

United States District Court
Northern District of California

California Labor Code §§ 226.7, 510, Plaintiff's motion for summary judgment is GRANTED in part and DENIED in part, and Defendants' motion for partial summary judgment is GRANTED.  The Court grants summary judgment as to liability, but not damages, for the violations of section 226.7 set forth in Section IV.B.2.

- As to Plaintiff's fourth cause of action for violations of California Labor Code § 226, Plaintiff's motion for summary judgment is DENIED, and Defendants' motion for partial summary judgment is GRANTED.  Plaintiff's recovery under section 226(a) is limited to violations occurring within the one year statute of limitations.  Plaintiff's claim under section 226(c) is time barred.

- As to Plaintiff's fifth cause of action for retaliation in violation of California Labor Code § 1102.5 and common law, Plaintiff's motion for summary judgment is DENIED, and Defendants' motion for summary judgment is GRANTED.

- As to Plaintiff's sixth cause of action for intentional infliction of emotional distress, Plaintiff's motion for summary judgment is DENIED, and Defendants' motion for summary judgment is GRANTED.

- As to Plaintiff's seventh cause of action for breach of contract, Plaintiff's motion for summary judgment is DENIED, and Defendants' motion for summary judgment is GRANTED.

- As to Plaintiff's eighth cause of action pursuant to the UCL, Plaintiff's motion for summary judgment is GRANTED in part and DENIED in part, and Defendants' motion for partial summary judgment is GRANTED.  Plaintiff is limited to violations occurring within the four year statute of limitations.  The Court grants summary judgment as to liability, but not damages, as to violations of the UCL predicated upon the violations of section 226.7 set forth in Section IV.B.2.

**IT IS SO ORDERED.**

Dated: June 6, 2016

_Lucy H. Koh_

LUCY H. KOH
United States District Judge

Case No. 14-CV-03791-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

United States District Court
Northern District of California